**WILLIAM E. SCHRAMBLING ACCOUNTANCY CORPORATION, Plaintiff,**

v.

**UNITED STATES of America, Defendant.**

No. C 86–6483 AJZ.

United States District Court, N.D. California.

Feb. 10, 1988.

On Application for Attorney's Fees April 18, 1988.

Joseph P. Russoniello, U.S. Atty., Jay R. Weill, Asst. U.S. Atty., Chief, Tax Div., George L. Bevan, Jr., Asst. U.S. Atty., San Francisco, Cal., for defendant.

Martin A. Schainbaum, San Francisco, Cal., for plaintiff.

## FINDINGS OF FACT, CONCLUSIONS OF LAW, AND MEMORANDUM OF DECISION

ZIRPOLI, District Judge.

### FINDINGS OF FACT

1. Plaintiff, the William E. Schrambling Accountancy Corporation, (hereinafter the "corporation"), is a California corporation engaged in the business of public accounting. William E. Schrambling (hereinafter "Schrambling") is the president and sole owner of the corporation.

2. Beginning in December 1979, the Corporation became delinquent in paying its federal employment taxes, including trust fund taxes withheld from employee wages. As of June, 1982, assessments had been made against the Corporation for employment taxes in excess of $37,000 for periods in 1979, 1980, 1980, and for the first quarter of 1982. The Corporation was also delinquent in filing corporate income tax returns.

3. On three occasions in 1981 and 1982, the corporation filed quarterly employment tax returns, enclosing checks which were subsequently returned for insufficient funds:

| Tax Quarter | Date Check Presented | Amount of Check |
|---|---|---|
| 9–30–81 | 11–04–81 | $14,339.44 |
| 12–31–81 | 2–03–82 | $ 5,528.35 |
| 6–30–82 | 8–04–82 | $ 9,583.06 |

The Corporation did not subsequently satisfy these delinquencies.

4. On June 14, 1982, Howard J. Schwartz, a senior revenue officer, was assigned to collect the Corporation's delinquent taxes and to investigate the Corporation's delinquent tax returns. Schrambling represented to Schwartz that he would be

able to pay the Corporation's tax liability from proceeds of an upcoming loan. Relying on this representation, Schwartz delayed filing federal tax liens or pursuing levy action until June 30, 1982, the agreed-upon date by which Schrambling would pay the delinquent taxes. Schwartz did not hear from Schrambling or receive funds to pay the delinquent taxes by July 1, 1982. On July 2, 1982, Schwartz issued two bank levies. He received $98.38 from these levies.

5. After the levies were issued, Schrambling spoke with Schwartz. Schrambling promised that he would file the delinquent tax returns shortly and that he would make federal tax deposits. Schrambling did not file the tax returns until August, 1984, and he did not make federal tax deposits.

6. After Officer Schwartz levied Schrambling's corporate accounts, Schrambling stopped using the corporate accounts and used his personal accounts to pay corporate bills.

7. On or about July 1, 1982, the Corporation formed a partnership with Jack Chu. Schrambling and Chu was a California general partnership engaged in the accounting business. When the partnership was formed, Schrambling transferred all of the assets and liabilities, except federal taxes, to the partnership. Schrambling did not inform Jack Chu that the Corporation was delinquent in filing tax returns or paying taxes.

8. In July, 1983, the partnership became delinquent in payroll taxes. Revenue officer Cheryl Matthews was assigned to collect the delinquent taxes. During the course of discussions with Matthews, Jack Chu provided her with a list of accounts receivable for the partnership. On the bottom of the list was a notation that the list was confidential and that the IRS was not authorized to contact any clients on the list without prior consent by Schrambling and Chu. Neither Matthews nor any other revenue officer agreed to be bound by the notation. Schrambling and Chu eventually paid the delinquent taxes.

9. In May, 1984, Cheryl Matthews was assigned to collect the Corporation's delinquent taxes and tax returns. She was the fourth officer assigned to the case. Although Matthews met with Schrambling several times to discuss methods of paying the delinquent taxes, Schrambling did not voluntarily pay the taxes.

10. On or about June 14, 1984, Matthews hand delivered a Final Notice and Demand to Schrambling. The notice covered the following tax periods:

| Form Number | Tax Period |
| --- | --- |
| 941 | 06–30–81 |
| 941 | 06–30–81 |
| 941 | 12–31–81 |
| 941 | 03–31–82 |
| 941 | 06–30–82 |
| 941 | 12–31–82 |

11. In August, 1984, after Matthews issued a summons, Schrambling delivered fifteen delinquent tax returns to Matthews. Schrambling did not make any payments on the returns, however.

12. On October 4, 1984, the Corporation's case and the partnership's case were reassigned to revenue officer Charles Stegner.

13. Upon receiving the case files for the Corporation and the partnership, Stegner reviewed the files, including the histories maintained by the prior revenue officers assigned to the cases. He read that Schrambling had given the IRS checks to pay the Corporation's taxes which were returned for insufficient funds. He reviewed the past written demands for payment sent to Schrambling. He read about the transfer of corporate assets to the partnership. Stegner read that Schrambling had stated that he did not have a corporate bank account for the Corporation. Based on his experience as a revenue officer, Stegner thought that there probably was a corporate bank account. There was extensive evidence in the file indicating that revenue officers had been discussing and requesting payment from Schrambling for more than two years and that Schrambling had not followed through on commitments to pay the Corporation's taxes or to file its returns. Based on this information, Stegner formed the impression that contact with the taxpayer would not yield funds or

financial information, and that levying would be an appropriate step.

14. On October 9, 1984, Stegner mailed out sixteen levies to banks, but he did not receive any funds.

15. After receiving no funds from the bank levies, Stegner decided to levy clients of Schrambling and Chu. Stegner used the accounts receivable list from the partnership file to determine who was to receive notices of levy. Stegner believed that the clients on the accounts receivable were possibly also clients of the Corporation. He based this belief on the close relationship between the partnership and the Corporation, the fact that Schrambling did not perform accounting services exclusively for the partnership, and the belief that there was possibly commingling of funds between the two entities. Schrambling and Chu did not authorize the IRS to contact these clients.

16. On or about October 31, 1984, Stegner discussed the possibility of issuing levies to clients of the partnership to collect Corporation taxes with his group manager, Curtis Chan. Chan approved of Stegner's decision to send out the levies.

17. On November 6, 1984, Stegner mailed notices of levy to the twenty-two largest accounts receivable on the partnership list. Since the partnership had not paid its delinquent taxes by this time, Stegner included levies for the partnership taxes in the same envelopes. Schrambling became aware of these levies prior to November 19, 1984.

18. On November 8, 1984, Jack Chu delivered payment for the partnership taxes to Stegner. Upon receipt of this payment, Stegner issued a Release of Levy to each of the persons who received the Notice of Levy for the partnership.

19. On November 16, 1984, a revenue officer who was handling another account for which Schrambling owed taxes informed Stegner that Schrambling was considering filing bankruptcy.

20. Although Stegner received no money from the November 6, 1984 levies, he received some written responses that indicated that some of the clients had recently paid funds to the Corporation.

21. On November 20, 1984, and November 21, 1984, Stegner mailed out Notices of Levy to the remaining fifty-five clients on the partnership accounts receivable list.

22. In issuing the Notices of Levy on October 9, 1984, November 6, 1984, November 20, 1984, and November 21, 1984, Stenger relied on the Notice of Final Demand issued by Cheryl Matthews on June 12, 1984.

23. The levies issued after November 19, 1984 covered the following tax periods that were not listed on the Notice of Final Demand issued June 12, 1984:

| Form Number | Tax Period |
|---|---|
| 941 | 9/30/79 |
| 941 | 12/31/83 |
| 940 | 12/31/80 |
| 940 | 12/31/81 |
| 940 | 12/31/82 |
| 940 | 12/31/83 |

The IRS did not send a notice of final demand and intent to levy for these periods prior to November 19, 1984.

24. Plaintiff's tax delinquency did not constitute a jeopardy situation.

25. Subsequent to the issuance of the levies, Stegner received two $1,000.00 payments from Schrambling to be applied against the Corporation's tax liability. No other payments were received. In February, 1985, Stegner decided that the Corporation's tax liability was uncollectible from the Corporation, and that collection of the 100 percent penalty assessment should be pursued against Schrambling individually under 26 U.S.C. § 6672.

## CONCLUSIONS OF LAW

1. All federal tax returns and return information are confidential, and except as authorized by Title 26 of the United States Code, no officer of employee of the United States may disclose such information in any manner in connection with his official duties. 26 U.S.C. § 6103(b).

2. Internal Revenue officers or employees may disclose return information in connection with their official duties "to the

extent that such disclosure is necessary in obtaining correct determination of tax, liability for tax, or the amount to be collected or with respect to the enforcement of any other provision of this title." 26 U.S.C. § 6103(k)(6). Under section 6103(k)(6), a revenue officer is authorized to disclose return information in a proper notice of levy because disclosure is necessary to achieve the purpose of the notice.

3. A taxpayer is authorized to bring a civil action against the United States if:

any officer or employee of the United States knowingly, or by reason of negligence, discloses any return or return information with respect to a taxpayer in violation of any provision of section 6103....

The United States is not liable under section 7431 for disclosures resulting from "a good faith, but erroneous, interpretation of section 6103." 26 U.S.C. § 7431(b).

4. The period of limitations for bringing suit under Section 7431 is two years from the date of discovery of the unauthorized disclosure of tax information. 26 U.S.C. § 7431(d).

5. The Secretary of the Internal Revenue Service or his delegate may collect taxes by levy upon all property and rights to property belonging to a taxpayer if that taxpayer neglects or refuses to pay delinquent taxes within ten days after notice and demand. 26 U.S.C. § 6331. The Secretary must notify the taxpayer in writing of his intent to levy, and such notice must be 1) given in person, or 2) left at the dwelling or usual place of business of such person, or 3) sent by certified or registered mail to such person's last known address no less than ten days prior to levy.

6. The final demand notice required by 26 U.S.C. § 6331(d) is in addition to the notice and demand required by § 6331(a), and a form letter 1058 (DO) may be used for this purpose. *See* Internal Revenue Service Manual, Part V, § 5361(2).

7. A levy is proper under Section § 6331 if it is made:

1) after compliance with the notice and demand requirements of §§ 6303, 6331(d)(1);

2) for the purpose of collecting taxes;

3) upon property or rights to property of the taxpayer or upon property on which there is a tax lien.

8. If the United States is found liable for an unauthorized disclosure under section 7431(a), the government is liable to the taxpayer for damages equal to the sum of:

1) the greater of—

A) $1,000.00 for each act of unauthorized disclosure of a return or return information with respect to which such defendant is found liable, *or*

B) the sum of—

i) actual damages sustained by the plaintiff as a result of such unauthorized disclosure, plus

ii) in the case of a willful disclosure or a disclosure which is the result of gross negligence, punitive damages, plus

2) the costs of the action.

26 U.S.C. § 7431(c).

9. The "costs of the action" include reasonable attorneys' fees. *Huckaby v. United States Dept. of Treasury*, 804 F.2d 297, 298 (5th Cir.1986); 26 U.S.C. § 7430(c)(1)(A)(ii)(I).

## MEMORANDUM OF DECISION

The above-captioned case came on for trial in this court on October 19, 1987. The issue to be resolved is whether plaintiff, William E. Schrambling Corporation, is entitled to damages under 26 U.S.C. § 7431 for seventy-seven notices of levy sent by revenue officer Charles Stegner in an effort to collect delinquent taxes owed by plaintiff. This memorandum is based on the preceding conclusions of law and findings of fact.

## DISCUSSION

### I. *Statute of Limitations*

As a threshold matter, the court must determine whether plaintiff's claims fall within the statute of limitations. The period of limitations for bringing suit under 26 U.S.C. § 7431 is two years from the date of discovery of the unauthorized disclosure of tax information. 26 U.S.C. § 7431(d).

Plaintiff's suit was filed on November 19, 1986. Revenue Officer Charles Stegner mailed out the first twenty-two levies on November 6, 1984. The parties have stipulated that plaintiff learned about these levies prior to November 19, 1984. Thus, plaintiff's claims regarding the first set of levies are barred by the statute of limitations.

Defendant mailed the second set of levies on November 20, 1984 and November 21, 1984. Since plaintiff could not have discovered these levies until after November 19, 1984, plaintiff is entitled to proceed as to these levies.

## II. *Disclosure of Return Information*

To prevail under section 7431, plaintiff must show that an officer or employee of the United States knowingly, or by reason of negligence, disclosed return information in violation of any provision of 26 U.S.C. § 6103. Section 6103 provides that all tax return information is confidential and may not be disclosed except as authorized by the Internal Revenue Code. Section 6103(k)(6) authorizes disclosure "to the extent disclosure is necessary in obtaining correct determination of tax, liability for tax, or the amount to be collected or with respect to the enforcement of any other provision of" the Internal Revenue Code.

Section 7431(b) exempts from liability any disclosures resulting from "a good faith, but erroneous interpretation of section 6103."

Thus, defendant is not liable for disclosures if 1) they are necessary to enforce any provision of the Internal Revenue Code, or 2) the employee's actions were based on a good faith interpretation of section 6103.

■ In the present case, the disclosures at issue were notices of levy. Revenue officers are authorized to disclose return information in a proper notice of levy because disclosure is necessary to achieve the purpose of the notice. *See* 26 U.S.C. § 6331. However, improper notices of levy may be grounds for liability under section 7431. *Rorex v. Traynor*, 771 F.2d 383 (8th Cir.1985).

## III. *Propriety of the Notices of Levy*

■ A levy is proper if it is made:

1) after compliance with the notice and demand requirements of §§ 6303 and 6331(d)(1);

2) for the purpose of collecting taxes;

3) upon property or rights to property of the taxpayer or upon property on which there is a tax lien.

*See generally* 26 U.S.C. § 6331.

There is no dispute in this case that the levies were issued for the purpose of collecting taxes. Revenue officers had been trying to collect delinquent taxes from plaintiff for more than two years. Officer Stegner testified that he believed that levies were the only method that could produce funds to pay the taxes.

■ The parties dispute whether the levies were directed to "property or rights to property of the taxpayer." Officer Stegner sent the notices of levy to accounts receivable of Schrambling and Chu, a partnership in which plaintiff was a partner. Plaintiff claims that the IRS knew that these clients did not owe money to plaintiff; they were not plaintiff's clients. However, Officer Stegner had reasonable grounds to believe that some of the partnership clients could owe money to plaintiff. First, plaintiff's partner, Jack Chu, testified that plaintiff brought some clients into the partnership. Second, when Officer Stegner received responses from the first set of levies, many clients indicated that they had paid funds to the taxpayer during the past year.

Although no court has yet articulated the degree of factual certainty that is required before a revenue officer can levy property, this court is guided by the IRS's interpretation of section 6331. *See United States v. National Bank of Commerce*, 472 U.S. 713, 105 S.Ct. 2919, 86 L.Ed.2d 565 (1985) ("The IRS's understanding of the terms of the Code is entitled to considerable deference."). The IRS Manual provides that "a notice of levy should be served only when there is evidence or reasonable expectation that the third party has property or rights

to property of the taxpayer." *See Timmerman v. Swenson,* 79–2 U.S.T.C. (CCH) ¶ 9588, at 88,140 [available on WESTLAW, 1979 WL 1446]. Officer Stegner's belief that the clients of the partnership might also owe money to plaintiff was reasonable, and thus levying the partnership clients was not improper.

■ The parties also dispute whether Officer Stegner complied with the Notice and Demand requirement of Section 6331(d)(1). Section 6331(d)(1) requires that ten days prior to taking levy action, the IRS must notify the taxpayer of its intention to levy. The notice must be given in person, left at the taxpayer's dwelling or usual place of business, or sent by certified or registered mail to the person's last known address. 26 U.S.C. § 6331(d)(1).

Prior to mailing out the fifty-five notices of levy on November 20th and 21st, Officer Stegner did not deliver a final notice and demand to plaintiff. Rather, he relied on a letter 1058 that Officer Cheryl Matthews delivered to plaintiff on June 14, 1984. However, this letter 1058 did not include all of the tax periods covered by the notices of levy. *See* Finding of Fact No. 22. Thus, plaintiff never received notice of intention to levy as to those periods. Officer Stegner did not act improperly in issuing notices of levy as to the periods for which plaintiff had received notice of intention to levy, but the notices were nevertheless improper because they included tax information regarding periods for which plaintiff had not received notice.

IV. *Good Faith Defense*

Even though the notices of levy were improper, defendant is not liable for damages if the officer's actions were based on a "good faith, but erroneous, interpretation of section 6103." 26 U.S.C. § 7431(b).

■ In *Huckaby v. United States Dept. of Treasury,* 794 F.2d 1041 (5th Cir.1986), the court adopted an objective standard to determine whether the good faith exception applied. The court stated that the relevant inquiry is "whether a reasonable IRS agent would have known of rights provided by [the sections at issue], and of his own agency's applicable regulations and internal rules." *Id.* at 1048. Using this standard, if an officer should know the procedures he should follow, and he does not follow them, he is not acting in good faith.

In the present case, Officer Stegner should have been aware that plaintiff was entitled to final notice and demand as to each period covered by the notice of levy. He should have known that the previous notices sent by the Service Center would not suffice. The Internal Revenue Service Manual for Revenue Officers clearly states that "the Service must notify the taxpayer in writing of the Service's intention to levy. This notice is in addition to the notice and demand required by IRC section 6331(a)...." Manual, Part V, § 5361. Although Officer Stegner knew or should have known that plaintiff was entitled to final notice and demand, he did not exercise care in relying on the letter 1058. Even a cursory glance at the letter would indicate that it did not cover all of the periods that Officer Stegner intended to include in the notices of levy. Thus, applying the *Huckaby* test, Officer Stegner did not act in good faith.

■ Further, even a plain reading of the good faith exception indicates that it does not apply in this case. The good faith exception applies to good faith, but erroneous interpretations of section 6103. Here, Officer Stegner was not acting under a misinterpretation of section 6103. Rather, he was acting under the misconception that plaintiff had received final notice and demand for all periods covered by the levies. In this regard, this case is similar to *Husby v. United States,* 672 F.Supp. 442 (N.D.Cal. 1987). In *Husby,* a revenue officer served a notice of levy on plaintiff's credit union despite the fact that plaintiff had filed a Petition in Tax Court seeking redetermination of the deficiency. Defendant argued that since the disclosures were the result of honest mistakes, the good faith exception should apply. The court rejected this argument, stating that "§ 7341(b) does not create a general good faith defense; on its face it applies only to good faith misinter-

pretations of § 6103. Defendant fails to explain who, if anyone, made any such interpretation of the statute, or what the erroneous interpretation might have been." *Id.* at 445. Based on the foregoing, the good faith exception does not apply to this case.

### V. *Damages*

■ If the United States is found liable for an unauthorized disclosure under section 7431(a), plaintiff may recover damages equal to the sum of:

1) the greater of—

A) $1,000 for each act of unauthorized disclosure of a return or return information with respect to which such defendant is found liable, *or*

B) the sum of—

i) actual damages sustained by the plaintiff as a result of such unauthorized disclosure, plus

ii) in the case of a willful disclosure or a disclosure which is the result of gross negligence, punitive damages, plus

2) the costs of the action.

26 U.S.C. § 7431(c). Thus, plaintiff is entitled to either $1,000 per act of disclosure or actual damages and punitive damages. In the present case, plaintiff has not proved actual damages. Rather, plaintiff seeks $1,000 per alleged act of disclosure, plus punitive damages. Since this court has no proof that actual damages exceed $1,000 per disclosure, the proper measure of damages is $1,000 per disclosure. Under subsection (A) of section 7431(c)(1), plaintiff is not entitled to punitive damages.

To calculate damages, the court multiplies $1,000 by the number of "act[s] of disclosure." The relevant "act" in this case is the mailing of a notice of levy. Plaintiff is thus entitled to $55,000, plus costs of the action. Defendant asserts that plaintiff's recovery should be limited to $38,000, since plaintiff can only prove that 38 people received the notices of levy. However, section 7431(c)(1)(A) does not require proof of receipt. The $1,000 measure of damages provides an alternative to actual damages, thus allowing plaintiffs to recover damages even if they cannot prove

actual damages. To require plaintiffs to prove receipt of the notices of levy would defeat the purpose of this alternative measure of damages.

Plaintiff also seeks attorneys fees. As noted above, section 7431(c) provides that plaintiff shall recover the costs of the action. 26 U.S.C. § 7430(c)(1)(A)(ii)(III) defines "reasonable litigation costs" to include "reasonable fees paid or incurred for the services of attorneys in connection with the civil proceeding." Thus, plaintiff is also entitled to recover attorneys fees. *See Huckaby v. United States Dept. of Treasury*, 804 F.2d 297, 298 (5th Cir.1986).

### CONCLUSION

Based on the foregoing findings of fact, conclusions of law, and memorandum of decision, the court finds that the fifty-five notices of levy mailed by Revenue Officer Charles Stegner on November 20, 1984 and November 21, 1984 were not authorized by 26 U.S.C. § 6103. Accordingly, judgment is entered in favor of plaintiff in the sum of $55,000, plus reasonable costs of litigation.

### ON APPLICATION FOR ATTORNEY'S FEES

■ Plaintiff's application for attorney's fees was filed on March 14, 1988. The court has previously indicated that 26 U.S.C. § 7430(c) provides for recovery of costs and attorney's fees. However, upon further consideration, the court concludes that to recover attorney's fees, plaintiff must satisfy the requirements of 26 U.S.C. § 7430. Section 7430 requires that plaintiff prove that he was the "prevailing party." A party "prevails" in the action if he "establishes that the position of the United States in the civil proceeding was not substantially justified." The government's position is substantially justified if it is not unreasonable. *George v. United States*, 666 F.Supp. 962, 965 (E.D.Mich.1987). The court finds that defendant's position was not unreasonable. Defendant reasonably argued that, contrary to *Rorex v. Traynor*, 771 F.2d 383 (8th Cir.1985), levies are not subject to the confidentiality requirements of 26 U.S.C. § 6103(a). The court is also

mindful of the fact that it was defendant, not plaintiff, who brought forth the facts that were the basis of this court's judgment in plaintiff's favor.

Accordingly, IT IS HEREBY ORDERED that plaintiff's application for attorney's fees is denied.