**Thomas J. SMITH, Plaintiff,**

v.

**UNITED STATES of America,
Defendant.**

No. 87–3067.

United States District Court,
C.D. Illinois,
Springfield Division.

May 3, 1990.

Wayne R. Golomb, Springfield, Ill., for plaintiff.

James A. Lewis and Robert J. Eggers, Asst. U.S. Attys., Springfield, Ill., and David C. Hickman, Trial Atty., Tax Div., Washington, D.C., for defendant.

## OPINION

RICHARD MILLS, District Judge:

This is a postscript to the final chapter of this saga which we wrote three months ago.

We return to the uncommon facts surrounding the unauthorized disclosure of tax return information by an agent of the Internal Revenue Service to the Director of the Illinois Department of Revenue.

This story, like most tales, can best be understood by reviewing the events in chronological order.

## I. FACTS

During the early 1980s, Plaintiff, Thomas Smith, was employed by the Illinois Department of Revenue (IDR) and acted as the liaison official for the Federal–State Exchange Program (Program). The Program facilitates the exchange of confidential tax information between the Internal Revenue Service (IRS) and the IDR. As the liaison official, Mr. Smith was the contact point between the IRS and the IDR. During this time period J. Thomas Johnson was the Director of the IDR.

On the federal side of the equation, Ira Loeb was the District Director for the Springfield district of the IRS. As such, he was the federal official chiefly responsible

for the administration of the federal tax laws in the district.

During 1982 Mr. Smith and his wife were involved in a contested divorce action which was resolved by way of an agreed order on March 19, 1984. On the advice of his counsel, Mr. Smith failed to file federal and state income tax returns for 1982 and 1983 because of the pending divorce action. In addition, Mr. Smith had outstanding tax liabilities for 1980 and 1981.

On October 29, 1984, Mr. Loeb received a memorandum from Eugene Winston, Chief of the Collection Division for the district, chronicling Mr. Smith's tax difficulties. After receiving this information, Mr. Loeb determined that it indicated a potential state tax violation and that this deficiency reflected poorly on Mr. Smith's ability to carry out his liaison responsibilities. Mr. Loeb then decided that the IRS should request that Mr. Smith be relieved of his position as the liaison official.

To accomplish his goal, Mr. Loeb determined that the Director of the IDR should be contacted directly. Such a decision in eminently reasonable when one realizes that the person Mr. Loeb normally would have contacted with such information was Mr. Smith, the very individual who was the subject of the disclosure.

Cognizant of the strict disclosure laws, Mr. Loeb consulted IRS counsel for their opinion of whether the disclosure could legally be made. It was determined by counsel, and Mr. Loeb was advised, that the disclosure could properly be made under § 6103 of the Internal Revenue Code.[1] 26 U.S.C. § 6103. Counsel further advised Mr. Loeb on the implications of disclosure in light of *Rueckert v. Gore*, 587 F.Supp. 1238 (N.D.Ill.1984),[2] which involved disclosures of federal tax return information to the IDR. After receiving clearance from IRS counsel, Mr. Loeb personally provided Mr. Johnson with the Winston memoran-

dum and requested that Mr. Smith be relieved of his liaison responsibilities.

On December 7, 1984, Mr. Smith was suspended from the IDR pending his discharge for failure to properly file his tax returns. Mr. Smith appealed his discharge to the Illinois Civil Service Commission which reversed the IDR's decision to terminate Mr. Smith and, instead, imposed a 120 day suspension. The Commission's decision was affirmed by the Illinois Appellate Court. *Department of Revenue v. Smith*, 150 Ill.App.3d 1039, 103 Ill.Dec. 832, 501 N.E.2d 1370 (4th Dist.1986). Following the Commission's decision, Mr. Smith was returned to the IDR's payroll; however, he was not permitted to return to work and was placed on leave. In April of 1986 when Mr. Smith came up for reappointment pursuant to the Illinois Personnel Code he was not reappointed and was discharged from his position with the IDR. *See* Ill. Rev.Stat. ch. 127, ¶ 63b108b.18.

Entirely dissatisfied with his situation, Mr. Smith filed three lawsuits—one in state court and two in this court. The state court suit is an equity action seeking to enjoin the IDR from discharging Mr. Smith and is still pending. The first federal lawsuit, and the case at bar, was filed on February 11, 1987, against the United States for unauthorized disclosure of tax return information pursuant to § 7431 of the Code seeking six million dollars in compensatory and punitive damages. Six weeks later, on March 23, 1987, Mr. Smith filed suit against Mr. Loeb, Mr. Johnson, and three other members of the IDR for violation of his civil rights and again requested that he be compensated to the tune of six million dollars.

On January 18, 1989, we entered summary judgment on the issue of liability in favor of Mr. Smith in the instant case. *Smith v. United States*, 703 F.Supp. 1344

---

**1.** All references to the "Code" are to the Internal Revenue Code of 1954 as amended, unless otherwise noted. This is the pertinent Code for the time period at issue. The Code has since been redesignated as the Internal Revenue Code of 1986. *See* Tax Reform Act of 1986, Pub.L. No. 99–514, 100 Stat. 2085.

**2.** *Rueckert* was subsequently affirmed in *Rueckert v. Internal Revenue Service*, 775 F.2d 208 (7th Cir.1985). The appellate court decision was inapposite with respect to the advice given to Mr. Loeb because it was issued subsequent to the events in issue here.

(C.D.Ill.1989). We held that Mr. Loeb's disclosure violated § 6103 of the Code thus leaving only the issue of damages to be resolved in this case. On October 27, 1989, we entered summary judgment in favor of all of the Defendants in the civil rights lawsuit. *Smith v. United States,* 723 F.Supp. 1300 (C.D.Ill.1989). Finally, on February 13, 1990, in the instant case, we held that Mr. Loeb's disclosure to Mr. Johnson was not the proximate cause of Mr. Smith's discharge and thus Mr. Smith was only entitled to $1,000 in statutory damages plus the costs of the action as provided by § 7431(c)(1)(A). *Smith v. United States,* 730 F.Supp. 948 (C.D.Ill.1990).

The phrase "costs of the action" can, in some situations, include attorney's fees. Mr. Smith's attorney has expended approximately 1000 hours on these related cases and incurred out of pocket costs of $18,735.30. Mr. Smith's attorney agreed to represent him on a contingent basis and advance the costs of litigation. Thus, he is understandably very interested in seeking to shift the costs and attorney's fees to the United States. The United States, not surprisingly, objects to paying Mr. Smith's attorney's fees and most of his costs.

## II. ANALYSIS

### A. *Attorney's Fees*

Mr. Smith seeks to recover his attorney's fees pursuant to §§ 7430 and 7431 of the Code. In the alternative, he seeks to recover his fees under the Equal Access to Justice Act, 28 U.S.C. § 2412. We will address each of these provisions in turn.

#### 1. Section 7431

Section 7431 provides that a taxpayer whose return information has been disclosed in violation of § 6103 of the Code may bring a civil action against the United States. If the taxpayer is successful he may recover either his actual damages plus

punitive damages if the disclosure was wilful or statutory damages in the amount of $1,000 for each act of unauthorized disclosure. In addition, the taxpayer may recover the costs of the action. 26 U.S.C. § 7431(c)(2).

The term "costs" generally does not include attorney's fees. *Fleischmann Distilling Corp. v. Maier Brewing Co.,* 386 U.S. 714, 720, 87 S.Ct. 1404, 1408, 18 L.Ed.2d 475 (1967). Furthermore, the Internal Revenue Code contains a provision specifying when a taxpayer may recover his costs and attorney's fees. *See* 26 U.S.C. § 7430. Therefore, we hold that the phrase "costs of the action" contained in § 7431 does not provide an independent statutory basis for awarding attorney's fees to a taxpayer. *See Schrambling Accountancy Corp. v. United States,* 689 F.Supp. 1001, 61 A.F.T.R.2d 88–1254 (N.D. Cal.1988) (to recover attorney's fees for a violation of § 7431, taxpayer must satisfy the requirements of § 7430). To recover his attorney's fees under the Code, Mr. Smith must meet the requirements set forth in § 7430.

#### 2. Section 7430

Section 7430 of the Code provides that:

(a) **In general.**—In any administrative or court proceeding which is brought by or against the United States in connection with the determination, collection, or refund of any tax, interest, or penalty under this title, the prevailing party may be awarded a judgment or a settlement for—

. . . . .

(2) reasonable litigation costs....

26 U.S.C. § 7430(a). This section of the Code[3] then defines "reasonable litigation costs" as including fees paid to attorneys. *Id.* § 7430(c)(1)(B)(iii).

---

**3.** Section 7430 was enacted because the Equal Access to Justice Act, which permits a private litigant to obtain an award of costs and attorney's fees against the United States, was only applicable to tax cases brought in the district courts and the Court of Claims, and not to cases filed in the United States Tax Court. Therefore,

§ 7430 was enacted to remedy this inequity. *Sanders v. Commissioner of Internal Revenue,* 813 F.2d 859, 861 (7th Cir.1987) (citing H.R. Conf.Rep. No. 760, 97th Cong., 2d Sess. 686–87, *reprinted in* 1982 U.S.Code Cong. & Admin. News 781, 1190, 1449–50.).

■ The United States argues that this provision is inapplicable to the instant case because Mr. Smith's underlying action concerned the unlawful disclosure of his tax return information and was not brought "in connection with the determination, collection, or refund of any tax, interest or penalty." While this interpretation of § 7430 appears correct, it has been rejected by other courts which have considered this question.

In *Huckaby v. United States*, 804 F.2d 297 (5th Cir.1986), the court held that § 7430 applied to a taxpayer's suit for unlawful disclosure of tax return information under § 7431 because the IRS was in possession of the taxpayer's records for the purpose of determining his tax liability. *Id.* at 298. *See also Schrambling*, 689 F.Supp. at 1008, 61 A.F.T.R.2d at 88–1254. The United States has failed to cite any cases which adopt their position and our research has not revealed any. Therefore, we must conclude that § 7430 applies to the case at bar.

■ The United States also argues that Mr. Smith is not entitled to attorney's fees under § 7430 because he fails to meet the definition of "prevailing party" found in § 7430(c)(4)(A). To qualify as a prevailing party Mr. Smith must establish two things: (1) that the position of the United States was not substantially justified; and (2) that he has substantially prevailed with respect to the amount in controversy or the most significant issue or set of issues presented. We will address these two requirements in reverse order.

■ At the beginning of this case, Mr. Smith sought a total of six million dollars in compensatory and punitive damages. When all was said and done, he was only awarded $1,000 in statutory damages. Therefore, we cannot say that he "substantially prevailed with respect to the amount in controversy." However, contrary to the United States' position, we do believe that Mr. Smith has substantially prevailed with respect to the most significant issue in this case.

The United States argues that Mr. Smith contended that he was wrongfully terminated from his position with the IDR and that Mr. Loeb participated in this action by wilfully disclosing Mr. Smith's tax delinquencies. While Mr. Smith's termination provided the basis for his alleged multi-million dollar damages, the fundamental and initial issue was whether Mr. Loeb's disclosure was in violation of § 6103. Therefore, we must conclude that Mr. Smith has also satisfied the first element of the definition of "prevailing party" under § 7430.

Mr. Smith fails, however, to satisfy the second requirement necessary to establish that he was a prevailing party—that the position of the United States was not substantially justified. Congress made two changes relevant to this question when it amended § 7430 in the Tax Reform Act of 1986. *Sansom v. United States*, 703 F.Supp. 1505, 1507–08 (N.D.Fla.1988). First, under prior law, the taxpayer had to establish that the position of the United States was "unreasonable." The 1986 amendment changed "unreasonable" to "not substantially justified" to conform the language of § 7430 to the language of the Equal Access to Justice Act, 28 U.S.C. § 2412(d)(1)(A). *See* H.R.Conf.Rep. No. 841, 99th Cong., 2d Sess. *reprinted in* 1986 U.S.Code Cong. & Admin.News 4075, 4889. Second, the 1986 amendment defined "position of the United States" to include both the position of the Government in the civil proceeding and any administrative action. 26 U.S.C. § 7430(c)(4)(B), (c)(7). This amendment was added to resolve a split among the circuits. *See Harrison v. Commissioner of Internal Revenue*, 854 F.2d 263, 265 n. 3 (7th Cir.1988), *cert. denied*, — U.S. ——, 109 S.Ct. 1313, 103 L.Ed.2d 582 (1989). This latter change is irrelevant to the case at bar because there were no administrative proceedings involved in this case and thus our inquiry is limited to examining the position of the United States in the judicial proceeding.

Turning to the first element of the definition of "prevailing party," the taxpayer has the burden of establishing that the position of the United States was not substantially justified. *Creske v. Commissioner of Internal Revenue*, 896 F.2d 250, 251 (7th

Cir.1990). In the context of interpreting identical language under the Equal Access to Justice Act, the Supreme Court has defined "substantially justified" to mean "justified to a degree that could satisfy a reasonable person." This definition, in turn, depends upon whether the position of the United States had a reasonable basis in law and fact. *Pierce v. Underwood*, 487 U.S. 552, 565–66 & n. 2, 108 S.Ct. 2541, 2550 & n. 2, 101 L.Ed.2d 490 (1988).

The Court in *Pierce* considered several objective criteria as well as the actual merits of the Government's position in determining whether the Government's stance was substantially justified. In *Pierce,* the Government settled the litigation on unfavorable terms. In the present case, the United States did not settle but instead fought to the end. The Court in *Pierce* refused to penalize the Government for settling because other factors, besides a weak case, could be involved in the settlement. *Pierce,* 487 U.S. at 568, 108 S.Ct. at 2551–52. Similarly, we hesitate to reward the Government for not settling because such action could encourage the United States to litigate marginal claims in an attempt to avoid imposition of attorney's fees. Therefore, although we note that this case was not settled, we do not rely upon this fact in determining whether the Government's position was substantially justified.

The second criteria mentioned by the *Pierce* Court was the stage at which the litigation was decided. In *Pierce,* as in this case, the action was terminated prior to trial. In the instant case, we granted summary judgment in favor of the Plaintiff on the question of liability and in favor of the Defendant on the issue of actual damages. However, this entire case lasted for over three years and spawned voluminous files. Furthermore, as the Court in *Pierce* stated, when "the dispute centers upon questions of law rather than fact, summary disposition proves only that the district judge was efficient." *Pierce,* 487 U.S. at 568–69, 108 S.Ct. at 2552. Therefore, the disposition of this case on motions for summary judgment does not establish that the position of

the United States was not substantially justified.

The final objective factor considered by the *Pierce* Court was the view expressed by other courts on the merits of the Government's position. As Justice Scalia stated, "a string of losses can be indicative; and even more so a string of successes." *Id.* In the case at bar, we stated at the beginning of our first opinion in this case: "This is a unique case—presenting a singular scenario. The Court has found no case law dispositive of the issues posited." *Smith v. United States,* 703 F.Supp. 1344, 1345 (C.D.Ill.1989). This factor clearly militates in favor of a finding that the position of the United States was substantially justified. On the other hand, we do not believe that the lack of precedent on a question is enough, standing alone, to hold that the Government's position was substantially justified. Therefore, we must, at last, turn to the actual merits of the Government's position in this litigation.

The primary issue in this case was whether Mr. Loeb's disclosure of Mr. Smith's tax return information to Mr. Johnson was done in compliance with § 6103(d) of the Code. That provision requires the state agency to make a written request for the information to the IRS. The Government contended that this requirement was met by the Coordination Agreement and the Implementation Agreement. *See Smith v. United States,* 703 F.Supp. 1344, 1347 (C.D.Ill.1989). We held that Mr. Loeb had failed to comply with the requirements of the Implementation Agreement and, therefore, he had failed to satisfy the written request requirement of § 6103(d). This conclusion certainly was not self-evident and, in fact, Mr. Smith did not raise this argument. *See Zinniel v. Commissioner of Internal Revenue,* 883 F.2d 1350 (7th Cir.1989) (Government's position reasonable because the underlying litigation involved a complex analysis of the Code and its legislative history), *cert. denied,* —— U.S. ——, 110 S.Ct. 1805, 108 L.Ed.2d 936 (1990).

In light of the lack of precedent on the issues posited by this case, and the techni-

cal interpretation of the Implementation Agreement and its interrelationship with § 6103(d), we must conclude that the position of the United States was substantially justified and thus Mr. Smith is not a "prevailing party" within the meaning of § 7430(c)(4)(A)(i). Therefore, Mr. Smith cannot recover his attorney's fees under § 7430 of the Code. *See Harrison v. Commissioner of Internal Revenue,* 854 F.2d 263 (7th Cir.1988) (attorney's fees denied because Government was reasonable in issuing notice of deficiency to toll the statute of limitations and then concede the case once completed audit revealed no tax deficiencies), *cert. denied,* —— U.S. ——, 109 S.Ct. 1313, 103 L.Ed.2d 582 (1989).

### 3. Section 2412

In the alternative, Mr. Smith contends that he is entitled to attorney's fees under the Equal Access to Justice Act, 28 U.S.C. § 2412(d)(1)(A) (EAJA).[4] The EAJA provides in relevant part that

> a court shall award to a prevailing party other than the United States fees and other expenses ... incurred by that party in any civil action (other than cases sounding in tort) ... brought by or against the United States ... unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

*Id.* The United States raises three arguments in support of its position that the EAJA does not allow Mr. Smith to recover his attorney's fees in this case. Because the first argument is dispositive of the question, we need not address the remaining ones.[5]

■ The first argument raised by the United States is that its position was substantially justified. We note at the outset that under § 7430 the taxpayer has the burden of proving that the position of the Government was not substantially justified. *Creske v. Commissioner of Internal Revenue,* 896 F.2d 250, 251 (7th Cir.1990). On the other hand, under the EAJA it is the Government which bears the burden of establishing that its position was substantially justified. *Donovan v. DialAmerica Marketing, Inc.,* 757 F.2d 1376, 1389 (3d Cir.), *cert. denied,* 474 U.S. 919, 106 S.Ct. 246, 88 L.Ed.2d 255 (1985); *Martin v. Heckler,* 754 F.2d 1262, 1264 (5th Cir.1985); *Timms v. United States,* 742 F.2d 489, 492 (9th Cir.1984). This disparity raises the question of whether our prior holding that the position of the United States was substantially justified disposes of Mr. Smith's claim to attorney's fees under the EAJA as well as § 7430. We believe that it does.

Our earlier resolution of this question did not depend upon Mr. Smith's failure to meet his burden of proof to establish that the Government's position was not substantially justified. Rather, we conclude that not matter which party bears this burden in the present litigation, the Government's position was substantially justified under both the EAJA and § 7430 of the Code. Therefore, Mr. Smith's claim to attorney's fees must fail.

### B. *Costs*

■ Federal Rule of Civil Procedure 54(d) provides that "costs against the United States, its officers, and agencies shall be imposed only to the extent permitted by law." Fed.R.Civ.P. 54(d). In *Crawford Fitting Co. v. J.T. Gibbons, Inc.,* 482 U.S. 437, 107 S.Ct. 2494, 96 L.Ed.2d 385 (1987), the Supreme Court held that costs taxable pursuant to Rule 54(d) are limited to those expressly stated in the statutes, and § 1920

---

**4.** Plaintiff must characterize his request for attorney's fees under the EAJA in the alternative because § 2412(e) provides that the act is inapplicable to any proceeding to which § 7430 applies. 28 U.S.C. § 2412(e).

**5.** The two arguments we do not address are that this is a tort action and that special circumstances exist which would make an award of attorney's fees unjust. While the exclusion of tort actions from the EAJA may be read broadly

enough to cover disclosures of tax return information in violation of § 6103, a congressional report to the Tax Reform Act of 1976 suggests that in passing § 6103, Congress was motivated by a desire to protect the public's right to an effective tax system and not merely to provide a private right of action for an aggrieved taxpayer. 1976 U.S.Code Cong. & Admin.News 2897, 3747; *United Liquor Co. v. Gard,* 88 F.R.D. 123, 130 (D.Ariz.1980).

is the only applicable statute here. The clear import of *Crawford Fitting* is that our authority to tax costs is limited to only those costs identified under the statutory authorities.

That being the case, § 1920 provides that this Court may tax:

(1) Fees of the clerk and marshal;

(2) Fees of the court reporter for all or any part of the stenographic transcript necessarily obtained for use in the case;

(3) Fees and disbursements for printing and witnesses;

(4) Fees for exemplification and copies of papers necessarily obtained for use in the case;

(5) Docket fees under § 1923 of this title;

(6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920. Additionally, as the *Crawford Fitting* case held, the costs to be taxed pertaining to expert witnesses are limited by 28 U.S.C. § 1821, and that section allows only an attendance fee of $30 per diem, plus costs of travel. It is against these authorities that Plaintiff's bill of costs must be judged.

 Plaintiff seeks $18,735.30 in costs for the three related lawsuits surrounding the unlawful disclosure of his tax return information and his subsequent discharge. To begin with, to be recoverable as part of the costs, a disbursement must have been made in connection with the case in which the costs are allowed. *Wahl v. Carrier Manufacturing Co.*, 511 F.2d 209, 216 (7th Cir.1975). Thus, all of the costs listed by Mr. Smith on his bill of costs which relate only to the state court case (85–CH–63) and his civil rights case (87–3162) must be disallowed.

 We now turn to those costs relating specifically to the case at bar. Several of the items Mr. Smith seeks to tax to the United States simply are not taxable to the losing party. These include charges for telephone calls ($29.65), word processing services ($613.05), and an attorney's travel

costs incident to taking depositions ($652.00). *Id.* at 217.

 Mr. Smith also attempts to recover $1,360.00 paid to his attorney's paralegal for her work on this case. These costs are indistinguishable from attorney's fees which we previously held were not recoverable. *See Spray–Rite Serv. Corp. v. Monsanto Co.*, 684 F.2d 1226, 1250 (7th Cir. 1982) (paralegal and law clerk fees are recoverable as a portion of the plaintiff's reasonable attorney's fees), *aff'd*, 465 U.S. 752, 104 S.Ct. 1464, 79 L.Ed.2d 775 (1984). Thus, we must disallow them as well.

 Mr. Smith also seeks to tax $4,187.50 for the services of an economic expert. Section 1920(6) limits costs for expert witnesses to "compensation of *court appointed* experts." We did not appoint the expert for which Mr. Smith seeks to recover these costs and thus this amount must also be disallowed.

Section 1920(2) expressly allows for the taxing of the fees of the court reporter for all or any part of the stenographic record necessarily obtained for use in the case. Mr. Smith claims $3,346.45 for such stenographic services. The United States contends that these fees, as well as the witness fees and a substantial amount of the printing fees were incurred subsequent to our opinion on the question of liability and thus these fees relate solely to the issue of damages and that the Plaintiff clearly lost on this issue.

 It is well established that the expenses of discovery depositions shown to be reasonably necessary to the case are recoverable even if the deposition is not used as evidence at trial. *State of Illinois v. Sangamo Const. Co.*, 657 F.2d 855, 867 (7th Cir.1981); *Wahl*, 511 F.2d at 217. Therefore, this argument must fail.

The respective memoranda of the parties reveal a further problem with this item. Plaintiff contends that he deposed 19 individuals in this case. The Defendant, on the other hand, argues that it was only involved in 17 depositions. In reply the Plaintiff lists 15 witness but contends that one of them was deposed a total of three

times. Therefore, we will disallow this item at this time; however, we will allow Plaintiff to submit an amended bill of costs which specifies the name of each deponent, the date of the deposition, and the amount charged for that deposition.

Similarly, Plaintiff lists $211.48 on his bill of costs for witness fees which are recoverable pursuant to § 1920(3). However, on the reverse side of his bill of costs Plaintiff itemizes these expenses and claims a total of $361.48. Therefore, Plaintiff should also correct this discrepancy in his amended bill of costs.

█ The final item listed on Plaintiff's bill of costs is $3,592.00 for printing costs which are recoverable pursuant to § 1920(3). Plaintiff states that these fees were calculated at the rate of $0.50 per page which is the rate charged by the Clerk of Court. The Defendant contends that the fees charged by third parties are irrelevant to Plaintiff's costs unless these costs were actually paid to third parties. Defendant's objection is well taken. Plaintiff's amended bill of costs, therefore, should include an amount for printing costs which reasonably reflects the actual amount paid by him for such services.

The last item on Plaintiff's bill of costs, $120.00 filing fee, is clearly permitted under § 1920(1) and will be allowed.

### III. CONCLUSION

In conclusion, the position of the United States was substantially justified and thus Plaintiff is not a "prevailing party" as that phrase is defined in § 7430. Furthermore, Plaintiff is not entitled to attorney's fees pursuant to the Equal Access to Justice Act.

Turning to the question of costs, Plaintiff is awarded his filing fee of $120 and directed to submit an amended bill of costs relating to the court reporter expenses, witness fees, and printing expenses. All other costs listed on Plaintiff's bill of costs will be denied.

*Ergo,* Plaintiff's petition for attorney's fees and costs (d/e 97) is ALLOWED IN PART. The Clerk is directed to tax costs

of $120.00 which represents the filing fee in this cause against the United States. Plaintiff is ORDERED to submit an amended bill of costs within fourteen (14) days of this opinion itemizing his costs for court reporter services, witness fees, and printing expenses. Defendant will be allowed ten (10) days thereafter to respond. Plaintiff's petition for attorney's fees and costs is DENIED as to attorney's fees, travel expenses, paralegal fees, expert fees, word processing, and telephone charges. In addition, Plaintiff's bill of costs submitted in cause 87–3162 and 85–CH–63 are DENIED.