GUARANTY SERVICE CORPORATION, et al., Plaintiffs–Appellants Cross–Appellees,

v.

AMERICAN EMPLOYERS' INSURANCE COMPANY, Defendant–Appellee Cross–Appellant.

No. 89–4151.

United States Court of Appeals, Fifth Circuit.

Feb. 6, 1990.

---

James N. Compton, Peter C. Abide, Compton, Crowell & Hewitt, Biloxi, Miss., Carroll H. Ingram, Michael V. Ratliff, Hattiesburg, Miss., for plaintiffs-appellants cross-appellees.

Michael A. McKenzie, Wayne D. Taylor, McKenzie & McPhail, Atlanta, Ga., Robert H. Walker, Gulfport, Miss., Sari B. Marmur, McKenzie & McPhail, Atlanta, Ga., for defendant-appellee cross-appellant.

Before CLARK, Chief Judge, POLITZ and WILLIAMS, Circuit Judges.

CLARK, Chief Judge:

Guaranty Service Corporation, Southern Mortgage Services Corporation, and South-

ern Federal Savings and Loan Association (collectively "Monaco"), plaintiffs below, appeal a final judgment entered by the United States District Court for the Southern District of Mississippi. American Employers' Insurance Company ("American"), defendant below, cross-appeals. We affirm in part, reverse in part, and remand.

## I. FACTS

Monaco Lake East is an apartment complex on the Mississippi Gulf Coast. In 1985 Hurricane Elena struck the complex, causing extensive damage. Monaco hired Gulf Oaks Construction Company to prepare a repair cost estimate ("the Gulf Oaks estimate") for submission to Monaco's insurer, American. Gulf Oaks estimated that the repairs would cost $1,050,225.20. Monaco submitted this estimate to American.

Complaining that the Gulf Oaks estimate did not satisfy a clause in the insurance contract requiring a detailed repair cost estimate, American rejected the one and one-half page Gulf Oaks estimate and requested a more detailed accounting. Monaco subsequently submitted a revised estimate of $1,229,225.00. One week later Monaco submitted a third estimate of $818,000.00, representing the actual cash value rather than the replacement cost value of the repairs. American rejected each of these estimates, stating that the documents were mere damage summaries instead of the required detailed cost estimate.

Monaco subsequently filed this suit against American. Monaco's complaint stated that Monaco had satisfied the repair cost estimate requirement of the insurance contract, that American had persistently refused to obtain its own appraisal of the property damage as was allowed by the policy, and that American had made a bad faith refusal to pay the claim. American defended by asserting that Monaco had refused to submit a properly detailed repair estimate, had misrepresented the cost of repairs by submitting inflated cost estimates, and had concealed an estimate of $100,500.00 prepared by Carlos Brown ("the Brown estimate"). American filed a counterclaim seeking punitive damages for this alleged misrepresentation.

By consent of the parties the jury trial was conducted before a magistrate, who bifurcated the trial on the claim and counterclaim. Because the insurance contract specified that misrepresentation on the part of the insured in filing a claim would void the contract, the following interrogatory was submitted to the jury at the conclusion of the presentation of evidence on Monaco's claim: "Do you find that the plaintiffs wilfully and knowingly misrepresented or concealed material facts during the submission of their claims to the defendant?" The jury responded affirmatively, and Monaco's claim was dismissed.

With the trial on American's counterclaim set to begin, Monaco submitted a motion in limine asking the court to exclude all evidence relevant to damages suffered by American. The court had previously stated in conference with counsel that he would allow only opening statements on the counterclaim before directing a verdict for Monaco. Instead of abiding by his conference statement, the court dismissed American's counterclaim on the basis of the motion in limine. The court stated that American had failed to prove its reliance on Monaco's misrepresentation. Although American had successfully proven misrepresentation as an affirmative defense, the court decided that American had not proven all elements of fraud as an independent tort. The court, therefore, dismissed American's punitive damages claim. American was allowed, however, to retain $13,000 in unearned premiums paid by Monaco.

## II. MONACO'S APPEAL

A. The Submission to the Jury of the Misrepresentation Question

Monaco asserts that the district court erred in denying its motions for directed verdict and for judgment notwithstanding the verdict. Monaco also states that the court erroneously instructed the jury on misrepresentation when insufficient evidence had been proffered to create a jury

question on that issue. The standard for determining when a jury question has been developed at trial is stated in *Boeing Company v. Shipman*, 411 F.2d 365 (5th Cir. 1969) (en banc). We explained there that motions for directed verdict and judgment notwithstanding the verdict are properly denied when "there is substantial evidence opposed to the motions, that is, evidence of such quality and weight that reasonable and fair-minded men in the exercise of impartial judgment might reach different conclusions ... [t]here must be a conflict in substantial evidence to create a jury question." 411 F.2d at 374–75.

■ The court properly allowed the question of misrepresentation to proceed to the jury. The evidence offered at trial included damage estimates of extreme variation which had been submitted by Monaco. American argued that Monaco's activities— its misrepresentation in submitting the high Gulf Oaks estimate and its attempt to conceal the much lower Brown estimate— acted to void the insurance contract. Monaco responded that the differences in the original estimates were caused by differences in methods of calculation and in the extent of repairs considered, that the Brown estimate was an unreliable estimate produced by a contractor with very little experience in exterior housing repairs, and that any lack of detail in the estimates submitted was de minimis and could have been cured easily by American's own investigators. Substantial evidence was adduced by both parties during the three-week trial. A review of the record makes it clear that reasonable minds could differ over the correctness of the parties' assertions. Under *Boeing*, therefore, the court was correct to deny Monaco's motions for a directed verdict and for j.n.o.v.

B. The Grant of Summary Judgment for American on Monaco's Punitive Damages Claim

Monaco contends that the district court erred in granting summary judgment for American on Monaco's punitive damages claim. In granting summary judgment, the court stated that the case was a "pocket-book" dispute in which an award of punitive damages would be improper even if American were held liable for the claim. We agree.

■ The record here reveals that American never denied Monaco's claim. Nor did American deny that Monaco's policy covered damages to the apartment complex or that it was in force when the hurricane damage occurred. American consistently stated that it had not been given the information required by the insurance contract to make analysis of the claim possible. Monaco's claim was not effectively denied until the jury found that Monaco had misrepresented its damage claim and had thus breached the insurance contract. "[T]he Mississippi Supreme Court has been extremely reluctant to allow punitive damages in cases where the insurer did not deny coverage, but only disputed the amount of the claim or delayed payment." *Tutor v. Ranger Insurance Co.*, 804 F.2d 1395, 1399 (5th Cir.1986). Neither did American's actions display an "intentional wrong, insult, abuse or such gross negligence as to consist of an independent tort" as required under Mississippi law before punitive damages can be awarded for a breach of contract. *Progressive Casualty Ins. Co. v. Keys*, 317 So.2d 396, 398 (Miss. 1975). Accord *State Farm Mutual Automobile Insurance Company v. Roberts*, 379 So.2d 321, 322 (Miss.1980) (A "pocketbook dispute" over the amount of a claim "did not rise to the level of wanton, gross or intentional conduct in the nature of an independent tort. In the absence of such conduct, a punitive damages award cannot stand."). The grant of summary judgment on American's behalf was proper.

C. The Improper Remarks of American's Counsel Made During Closing Arguments

During his closing argument, counsel for American characterized Monaco as a "greedy" insured, implied that most of Monaco's witnesses had lied while giving testimony, and stated that exaggerated insurance claims cause increased insurance premiums. The court sustained Monaco's objections to these statements and admon-

ished both counsel not to make "conscience of the community" arguments. The court later instructed the jury that statements of counsel were not to be regarded as evidence. Monaco claims that the court erred in denying its motion for a new trial based on these improper statements which created a hostile jury environment for Monaco.

Our method of reviewing arguments of counsel for impropriety warranting a new trial is given in *Westbrook v. General Tire and Rubber Co.*, 754 F.2d 1233 (5th Cir. 1985). In that case we stated:

> When a closing argument is challenged for impropriety or error, the entire argument should be reviewed within the context of the court's rulings on objections, the jury charge, and any corrective measures applied by the trial court. Alleged improprieties may well be cured by an admonition or charge to the jury.

754 F.2d at 1238. The decision of the trial judge to grant or deny a new trial will not be lightly reversed. *Meyers v. Moody*, 693 F.2d 1196, 1220–21 (5th Cir.1982), cert. denied, 464 U.S. 920, 104 S.Ct. 287, 78 L.Ed.2d 264 (1983) ("It is well-established that a motion for new trial based upon inflammatory remarks is addressed to the sound discretion of the trial judge, and his ruling thereon will not be disturbed absent an abuse of that discretion."); *Edwards v. Sears, Roebuck and Co.*, 512 F.2d 276, 281 (5th Cir.1975) ("It is not our province to second-guess [the trial judge's] findings since '[t]he trial court's determination as to whether the verdict is the result of passion or prejudice will not be disturbed on appeal, unless the determination is clearly erroneous.'" *Quoting* 6A Moore's Federal Practice 59.–05[3], at 59–59 (1974).).

■ Arguments which invite a jury to act on behalf of a litigant become improper "conscience of the community" arguments when the parties' relative popular appeal, identities, or geographical locations are invoked to prejudice the viewpoint of the jurors. The improper remarks become the basis for granting a new trial when the trial judge, with the benefit of his or her first hand knowledge of the entire proceed-

ings, believes that the remarks infected the deliberations and conclusions of the jury. We seriously doubt whether the three comments made by American's counsel created in the jury the "us-against-them" attitude which we warned against in *Westbrook*, 754 F.2d at 1238. See also *Hall v. Freese*, 735 F.2d 956, 960 (5th Cir.1984). This is especially true because counsel for Monaco, playing the gander to American's goose, responded to American's closing argument by referring to American as "this insurance company over here from Boston, Massachusetts with Atlanta lawyers and Boston, Massachusetts insurance adjuster, wherever he is now...." When viewing the comments of American's counsel in context, and noting that objections to the comments were sustained, that counsel was admonished in the presence of the jury, and that the jury was later instructed to disregard such comments, we conclude that the court did not abuse its discretion in denying Monaco's motion for a new trial.

**D. Monaco's Motion to Examine the Jury**

Monaco contends that the magistrate erred in denying its motion to examine the jury. This motion was prompted by the return of a verdict by the jury after only ten minutes of deliberation and by three comments made by jurors outside the jury room which indicated their boredom and frustration with the trial. Two jurors commented that the case was "ridiculous" (or used words to that effect) and one commented that he would "rather be on the beach" than in the jury room.

■ Monaco did not substantiate the need for an examination of the jury. We have stated that "[w]e cannot hold an hourglass over the jury. If the evidence is sufficient to support the verdict, the length of time the jury deliberates is immaterial." *Marx v. Hartford Accident and Indemnity Company*, 321 F.2d 70, 71 (5th Cir.1963). The evidence in this case supports the verdict of the jury; therefore, it is of no importance that the jury's determination was made in only ten minutes.

The cases cited by Monaco on this subject offer no support for their position.

The comments allegedly made by the jurors here show nothing but the predictable frustration and ennui resulting from a long trial. Monaco has adduced no evidence of juror misconduct. The motion to examine the jury was properly denied.

## E. The Decision to Allow American to Retain Unearned Premiums

Although the district court had decided on a previous motion for summary judgment that the nature of this case did not warrant the imposition of punitive damages, he did allow American to keep a $13,000 unearned premium paid by Monaco. Monaco argues that this contradicts Mississippi insurance law, which calls for the return of any unused portion of an insurance premium after the cancellation of a policy. The court stated: "Under Mississippi law, where a contract of insurance is voided by acts of the insured which constitute a breach of the express provision of the contract, the insurer is not obligated to return premiums previously paid by the insured." We disagree.

The court relied on four sources for his interpretation of Mississippi law: *Casualty Reciprocal Exchange v. Wooley*, 217 So.2d 632 (Miss.1969); 16A Appleman, Insurance Law & Practice, § 9303 (1968); 44 Am. Jur.2d Insurance § 1614; and *Taylor v. Firemans Fund Ins. Co.*, 306 So.2d 638 (Miss.1974). His ruling does not follow logically from any of these sources. Wooley and the American Jurisprudence 2d citation approve only the pro rata retention by the insurance company of earned premiums when the misrepresentation of the insured causes the policy to be voided ab initio. The Appleman citation states only that an insurance company does not in every case waive its right to avoid liability under the policy by retaining policy premiums. Taylor touches tangentially on the waiver question, but does not speak to the question presented in this case.

A stronger argument for American's retention of the premium is made by American's citation of *Home Insurance Co. v. Cavin*, 167 Miss. 202, 149 So. 800 (1933). In that case Justice Griffith wrote:

Ordinarily, *when a policy of insurance, although delivered, has never taken effect and has throughout been of no force or validity as against the ostensible insurer*, the insured may recover the premium paid, with interest, for there the insurer has received something for nothing. One of the exceptions to this rule is that the insured may not recover the premium when he has been guilty of actual fraud *in the procurement of the policy* ... In order, however, that the stated exception shall apply to an insured, who is seeking the recovery of the premium paid, *his wrong in the procurement* of the policy must be an actual wrong; a wrong or fraud which contains moral turpitude as a real ingredient.

149 So. at 800 (emphasis added). Monaco asserts that Home Insurance does not apply here because American did not prove each element of fraud under Mississippi law. American responds that F▬.▬e Insurance applies not only to frauᴅ cases, but also to any case involving moral turpitude.

▬ We do not reach this question on the interpretation of *Home Insurance* because the emphasized portions of the above quotation show that the case does not apply to Monaco's situation. We are not dealing here with a case where the insurance policy has been declared void ab initio. Both parties stipulated during trial that the hurricane damage to Monaco's apartments was covered under the American policy and that the policy was in force at the time of the hurricane. Also, American has never alleged or proven that Monaco acted fraudulently in the procurement of the policy. Justice Griffith's announcement of the Mississippi rule makes clear that both of these conditions must be met for the insurer's retention of unearned premiums to be warranted. The court erred in awarding the unearned premium to American.

## III. AMERICAN'S CROSS–APPEAL

### A. Dismissal of the Cross–Appeal

The trial on American's counterclaim was set to begin immediately after the jury returned its special verdict on Monaco's claim. American's counterclaim sought pu-

nitive damages for Monaco's misrepresentation. Monaco filed a motion in limine seeking to exclude all evidence of American's damages suffered during the trial. With this motion before it, the court dismissed American's counterclaim, stating that American could not obtain punitive damages because American had failed to prove actual fraud on the part of Monaco. American now contends that Monaco's motion in limine was untimely and that the court erred in dismissing the counterclaim without having a proper motion for dismissal pending. American also argues that it did not have to prove fraud to be entitled to punitive damages.

We affirm the dismissal of the counterclaim. This result did not come as a surprise to American, because during a previous conference in chambers the court had announced that it would hear only opening statements on the counterclaim and would then direct a verdict for Monaco.

■ Regardless of whether American was required to prove fraud on the part of Monaco to be entitled to punitive damages, Mississippi law dictated the dismissal of the counterclaim. In *Vidrine v. Enger*, 752 F.2d 107 (5th Cir.1984), we stated:

> We find it sufficient to hold that, absent actual damages arising from a legally cognizable cause of action, Mississippi would not allow punitive damages. Exemplary or punitive damages are additional to compensatory damages. They are, as the Mississippi Supreme Court has said, "added damages." There being no actual damages, there can be no addition.

752 F.2d at 110 (footnotes omitted), quoting *Fowler Butane Gas Co. v. Varner*, 244 Miss. 130, 141 So.2d 226, 233 (1962). Accord *Alcorn County, Miss. v. U.S. Interstate Supplies, Inc.*, 731 F.2d 1160, 1169–70 (5th Cir.1984). American has made no claim for compensatory damages in this case. The claim for punitive damages, therefore, was properly dismissed. Any awkwardness in the procedural posture of the dismissal did not "affect the substantial rights of the parties" and, therefore, does not necessitate a modification of the magistrate's order. *See* Fed.R.Civ.P. 61.

**B. Denial of American's Motion for Directed Verdict**

American moved for a directed verdict based on its defense that Monaco never submitted a properly detailed repair cost estimate as required by the insurance contract. The district court denied this motion, and American assigns that denial as error. This issue is moot in light of our affirmance of the district court's judgment relieving American from all liability under the insurance contract.

**C. Refusal to Award American Costs**

■ Contrary to a motion submitted by American, the court directed each party in the litigation to pay its own costs. American contends that as the prevailing party, it should be awarded costs under Fed.R.Civ.P. 54(d). Our review of the magistrate's decision not to award costs to American "is narrow, and we will reverse only if an abuse of discretion is shown." *Schwarz v. Folloder*, 767 F.2d 125, 131 (5th Cir. 1985). The court here decided that both parties had prevailed in their claims, and that an awarding of costs was inappropriate. We agree, especially in light of our partial reversal which allows Monaco to recover the unearned premium held by American.

## IV. CONCLUSION

The judgment of the district court is AFFIRMED in part and, in part, REVERSED. The cause is REMANDED to the district court.