**Carol WARD, Plaintiff,**

**v.**

**UNITED STATES of America, Defendant.**

**No. 95–WY–810–WD.**

United States District Court,
D. Colorado.

June 2, 1997.

---

**12.** Plaintiff's request for attorney's fees pursuant to 42 U.S.C. § 1988 are the subject of a separate order.

Declan Joseph O'Donnell, Declan O'Donnell, P.C., Englewood, CO, William C. Waller, Jr., Dennis Hugh Mark, Waller and Mark, P.C., Denver, CO, for Carol Ward.

William G. Pharo, U.S. Attorney's Office, Civ. Div., Denver, CO, Joel J. Roessner, U.S. Dept. of Justice, Tax Div., Washington, DC, R. Scott Clarke, Stuart Gibson, U.S. Dept. of Justice, Tax Div., Washington, DC, for U.S.

## COURT'S FINDINGS OF FACTS AND CONCLUSIONS OF LAW

DOWNES, District Judge.

The above-captioned matter came before the Court for a non-jury trial. Plaintiff appeared and was represented by Denis H. Mark and William C. Waller, Jr. and Defendant was represented by R. Scott Clarke and Stuart Gibson, Department of Justice, Tax Division. The Court, having heard the evidence of both parties, having reviewed the pleadings and otherwise being fully advised in the premises, makes the following findings of fact and conclusions of law:

### I. Jurisdiction

This Court has jurisdiction pursuant to 26 U.S.C. § 7431(a)(1).

### II. Issues before the Court

This Court has previously issued orders on Defendant's Motion to Dismiss and on Defendant and Plaintiff's cross motions for partial summary judgment, which are hereby incorporated. This case arises out of a "jeopardy assessment" made by the Internal Revenue Service (hereinafter "IRS") on April 15, 1993 (See Def.'s Exhibit C), and the resulting dispute between the IRS and Plaintiff.[1]

The Court will briefly outline the issues. Plaintiff, Carol Ward, has filed suit against the United States Internal Revenue Department, asserting that the IRS and its employees and agents made unauthorized disclosures of her "return information" in violation of 26 U.S.C. § 6103(a) and seeks damages pursuant to 26 U.S.C. § 7431. Plaintiff al-

---

1. On April 15, 1993, the IRS issued a Jeopardy Assessment against Plaintiff in the amount of $324,889.00. (See Pltf.'s Exhibit No. 1.) This amount was eventually reduced to approximately $3,480.00.

leges five instances of unauthorized disclosure of "return information" by Defendant: (1) verbal disclosures by IRS employees to Plaintiff's customers and to Citadel Mall management; (2) the alleged posting of "return information" in the windows of three "Kid's Avenue" stores operated by Plaintiff's son; (3) disclosure of "return information" on August 3, 1993, during a live radio talk show on KVOR radio in Colorado Springs by the IRS District Director, Gerald Swanson and IRS employee Patricia Callahan; (4) disclosure of Plaintiff's "return information" in an IRS "fact sheet" provided to Inside Edition/American Journal (See Pltf.'s Exhibit No. 19); and (5) disclosure of "return information" in a published letter to the editor of the Colorado Springs Gazette Telegraph by James Scholan, a revenue officer in the Colorado Springs office of the IRS (See Pltf.'s Exhibit No. 21.).

Defendant denies that any "return information" was ever posted in any of the three "Kid's Avenue" stores or that any verbal disclosures were made to Plaintiff's customers or Citadel Mall management. Defendant concedes that IRS agents discussed Plaintiff's "return information" during a radio talk show, but asserts that Defendant's employees did not willfully or intentionally violate the law. Similarly, Defendant acknowledges that the "fact sheet" provided to Inside Edition/American Journal, did disclose "return information" but assert that Defendant did not willfully or intentionally violate the law.[2] With regard to the James Scholan letter to the editor, Defendant admits that the letter contains "return information," but asserts that Mr. Scholan obtained this information from newspaper articles and other publications and not from any information he obtained as an employee of the IRS.

In addition to the factual issues set forth above, a number of legal issues have been raised by the parties which will be addressed in the Court's Conclusions of Law.

After hearing the evidence, arguments of counsel and reviewing the applicable case law, the court is now prepared to issue findings of fact and conclusions of law pursuant to Rule 52(a), Fed.R.Civ.P.

### FINDINGS OF FACT

### Verbal Disclosures

1. The Court finds that, based upon the evidence, no verbal disclosures were made by the IRS to Plaintiff's customers. Nicole Garza, a former employee of Kid's Avenue store in the Villa Italia mall testified that after the store had been seized IRS agents came to the store to allow her to give customers their lay away merchandise. Ms. Garza could not recall the IRS agents names but asserts that the agents, "in a joking manner," told the lay away customers: that the Plaintiff had not paid her taxes; that the Plaintiff was using several different Social Security Numbers (hereinafter "SSN"); that Plaintiff was traveling in and out of the country; and that Plaintiff was suspected of selling and/or using drugs. Based upon the testimony the only IRS agents that could have been involved in this matter were Steven Black and Eugene Cass. Mr. Cass testified that on April 29, 1993, he met Nicole Garza at the Villa Italia Mall to get layaway merchandise for customers. Mr. Black and Mr. Cass acknowledged that if the statements Ms. Garza alleges were made, they would constitute a disclosure and would be extremely inappropriate. However, Mr. Black and Mr. Cass both vehemently denied ever making any such statements. The Court finds the testimony of Mr. Black and Mr. Cass more credible and convincing than that given by Ms. Garza. The Court notes that as a result of the IRS seizure, Ms. Garza lost her job. Accordingly, the Court finds that verbal disclosures of return information were not made to customers or individuals at the Villa Italia mall.

2. Plaintiff further asserts that verbal disclosures of return information was made

---

**2.** In its earlier motion for partial summary judgment the Government asserted that, based upon the language contained in a written consent executed by Plaintiff's on June 5, 1993 to a reporter for *Westword*, the disclosures made on the radio

and in the fact sheet were authorized pursuant to 26 U.S.C. § 6103(c). This Court rejected that argument in its Order on Cross Motions for Summary Judgment.

to Karen Purdy and Bob Taylor, managers for the Citadel Mall, where one of the Kid's Avenue stores was located. Both Mr. Taylor and Ms. Purdy testified that they received an IRS summons to produce information concerning the Kid's Avenue store. Mr. Taylor and Ms. Purdy testified that they went together to the Colorado Springs IRS office on May 17, 1993 and gave the information, in response to the summons, to an IRS agent by the name of Paula Dzierzanowski. Mr. Taylor and Ms. Purdy testified that, after waiting in the lobby area of the IRS office, Ms. Dzierzanowski met with them and took them back to another office. Taylor and Purdy both assert that after briefly reviewing the documents Ms. Dzierzanowski stated that the matter involved large sums of money and that Plaintiff had been on a number of trips to South America, had used several alias and that the situation fit the profile of money laundering and drugs. Ms. Purdy testified that both she and Mr. Taylor were shocked by this information. Based upon this information Purdy and Taylor determined that the best thing to do was re-lease the Kid's Avenue space. (See Pltf.'s Exhibit No. 24.)

Contrary to Mr. Taylor and Ms. Purdy's testimony, Paula Dzierzanowski testified that on May 17, 1993, she made an automatic teller machine withdrawal from a bank in South Haven, Mississippi. (See Def.'s Exhibit "AB.") In addition, the attendance records show that Ms. Dzierzanowski was on leave on May 17, 1993 (See Def.'s Exhibit "Z"). Jean Temple, another revenue agent in the Colorado Springs IRS office, testified that she recalled being asked to go to the front office to retrieve documents from a man and woman from the Villa Italia mall. Ms. Temple stated that she did not take either of these individuals back into the office area because it was a secured area. Finally, Ms. Temple denies ever discussing Plaintiff's return information with either of these individuals.

The Court finds the testimony of Ms. Temple and Ms. Dzierzanowski more credible than that offered by either Mr. Taylor or Ms. Purdy. The evidence clearly establishes, and this Court finds, that neither Mr. Taylor nor Ms. Purdy met with Paula Dzierzanowski on May 17, 1993. Both Mr. Taylor and Ms. Purdy had a motive for testifying as they did. In a September 16, 1993 letter Mr. Taylor advised Plaintiff that he had re-leased the Kid's Avenue space at the Citadel Mall and justified this action in part stating "the verbal communication that I received from the IRS agent that interviewed us, when Karen Purdy and I were summoned to their office on May 17, 1993, gave us an indication that this matter would not be resolved anytime soon." (See Pltf.'s Exhibit No. 24.) Having given this explanation to Plaintiff, Mr. Taylor and Ms. Purdy were stuck with their story.

Based upon a review of the evidence the Court finds that no verbal disclosure of Plaintiff's return information was made to either Mr. Taylor or Ms. Purdy.

**Postings**

3. Plaintiff has alleged that IRS agents posted Plaintiff's return information in the windows of the Kid's Avenue stores that the IRS seized at the Citadel Mall, Villa Italia Mall and the Lakeside Mall. Plaintiff presented evidence concerning these alleged postings by way of former employees and individuals who worked at stores located near the Kid's Avenue stores. These witnesses generally testified that they observed paper(s) posted in the windows which listed amounts owed by Plaintiff. Some of these witnesses also testified that these papers stated that Plaintiff was taking trips overseas and using different names and social security numbers. Defendant denies that anything other than a "Publication No. 34" was posted in the store windows. (See Def.'s Exhibit M.) Defendant presented testimony from various IRS agents and officials including Mr. Tom Miller, Mr. Steven Black and Mr. Eugene Cass, the revenue officers in charge of the three store seizures, that Plaintiff's return information was not posted by any IRS employee in the windows of the Kid's Avenue stores.

The Court finds that Plaintiff's return information was not posted in the store windows by Defendant. In making this finding the Court notes that the testimony offered through Plaintiff's witnesses was vague and often conflicting. Nonetheless, the witnesses

were certain that these postings contained amounts owed by Plaintiff and/or Plaintiff's alleged aliases. The Court notes that a number of the witnesses offered by Plaintiff, Jill Moore, Michelle Hunter, Scott Unruh, and Kelley Seward acknowledged that, prior to trial, they had been approached by Tristan Ward, Plaintiff's son, and shown a copy of the jeopardy assessment which Plaintiff suggests was posted on the store windows. (See Def.'s Exhibit C, Pltf.'s Exhibit No. 1.) In addition, a number of the witnesses offered conflicting testimony as to the contents of the notice as well as to where the notices were allegedly posted in the store windows. Based upon the testimony of Paula Dzierzanowski it appears that one of documents that may have been posted at the Kid's Avenue store in the Citadel mall was a lien notice by the City of Colorado Springs. (See Def.'s Exhibit K.)

Based upon the evidence the Court finds that Plaintiff's return information was not posted by Defendant on the Kid's Avenue store windows.

**Radio Talk Show**

 4. Defendant has conceded and this Court finds that Defendant, through IRS employees Gerald Swanson and Patricia Callahan, disclosed Plaintiff's "return information" during their August 3, 1993, appearance on a live talk show broadcast on KVOR radio. The Court further finds that Mr. Swanson and Ms. Callahan's disclosures were negligently made. As this Court previously found, Defendant's reliance upon the written consent by Plaintiff was mistaken and, in light of the IRS's own regulations, 26 C.F.R. § 301.6103(c)–1, it cannot be found to be a "good faith, but erroneous, interpretation of section 6103" exempt from liability under 26 U.S.C. § 7431(b). *See Barrett v. United States of America,* 51 F.3d 475 (5th Cir.1995) citing with approval *Huckaby v. United States Department of the Treasury,* 794 F.2d 1041, 1048–49 (5th Cir.1986). Furthermore, pursuant to *Rodgers v. Hyatt,* 697 F.2d 899, 906 (10th Cir.1983), the Court finds that Plaintiff's prior disclosure of return information, including debating the merits of the jeopardy assessment with Swanson and Callahan while on the radio talk show, did not waive the confidentiality of Plaintiff's return information. Nonetheless, the Court finds that Mr. Swanson and Ms. Callahan's disclosures were not willful or the result of gross negligence supporting an award of punitive damages. *See Barrett v. United States,* 100 F.3d 35, 40 (5th Cir.1996) (defining willful conduct as that which is done without ground for believing that it was lawful or conduct marked by careless disregard of whether one has a right to act in such manner and grossly negligent as conduct which is willful or marked by wanton and reckless disregard of the rights of another). The Court finds that, prior to the radio broadcast, Defendant sought and received advice (although incorrect), as to whether disclosure of Plaintiff's return information was authorized in light of the prior consent executed by Plaintiff. (See Pltf.'s Exhibit No. 71, Declaration of Michael S. Perkins.)

5. Over the objection of Defendant the Court accepted the testimony of Mr. Greg Sher. Mr. Sher is the director of sales for the Citadel Group which owns and operates KVOR and other radio stations. Mr. Sher testified that, based upon his review of Arbitron Company ratings, there were approximately 3,200 to 3,300 listeners tuned into the KVOR radio talk show on which Mr. Swanson and Ms. Callahan appeared and discussed Plaintiff's return information. (See Pltf.'s Exhibits No. 25 and 74.) The Court finds that Mr. Sher's estimate is too speculative to support a finding by this Court that 3,200 to 3,300 listeners were tuned into the radio talk show. Nonetheless, based upon the evidence and a review of the taped radio show, the Court finds that Mr. Swanson and Ms. Callahan each committed an act of disclosure in violation of 26 U.S.C. § 6103. (See Pltf.'s Exhibit 16).

**Fact Sheet**

██ 6. Based on Defendant's concessions, this Court finds that a disclosure of Plaintiff's return information was made when Defendant provided Inside Edition with a "fact sheet" concerning Plaintiff's dispute with the IRS. (See Pltf.'s Exhibit No. 19.) As with the disclosure made on KVOR radio, the Court finds that Defendant's disclosure was negligent, but not willful or grossly neg-

ligent, supporting an award of punitive damages. Ms. Callahan, who had provided the "fact sheet" to Inside Edition, testified that prior to release she had checked with the IRS disclosure officer, Mike Perkins, who incorrectly advised her that Plaintiff's prior consent authorized the disclosure of Plaintiff's return information. The Court rejects Plaintiff's suggestion that the material contained in the fact sheet made intentional misstatements of the "facts" surrounding Plaintiff's case. Accordingly, the Court finds that one act of unauthorized disclosure was made as a result of the "fact sheet" being provided to Inside Edition.

**Letter to the Editor**

■ 7. This Court finds that the letter written to the editor of the Colorado Springs *Gazette Telegraph* by the Colorado Springs IRS Revenue Officer, James Scholan, which was published in the October 12, 1993 edition of that paper contained "return information." (See Pltf.'s Exhibit No. 21.) Based upon the testimony of Tom Miller and James Scholan, this Court also finds that this return information was obtained by Mr. Scholan in his capacity as a revenue officer for the IRS.

Mr. Miller testified that Mr. Scholan would have had to have been "in a coma" not to have known that there was a collection action going on involving Plaintiff. In addition, contrary to his declaration, which was filed with this Court, Mr. Scholan was forced to acknowledge that he did serve a levy for Mr. Miller, making ¶ 2 of his declaration inaccurate. (See Pltf.'s Exhibit No. 68.) Mr. Scholan also acknowledged that ¶ 3 was inaccurate in that he did become aware of Plaintiff's tax information, partly based upon his official duties. In fact, Mr. Scholan testified that he knew from his job as a revenue officer that there had been a seizure against Plaintiff because of her outstanding tax liability. Finally, Mr. Scholan testified that ¶ 6 of his declaration was inaccurate, in that he did have access to Plaintiff's return information gathered by the IRS.[3]

Mr. Scholan testified that, despite his prior IRS training concerning the disclosure of return information, he thought that he was not disclosing return information because of Plaintiff's prior letter to the editor and her appearance on the radio. Mr. Scholan testified that he learned only recently that a taxpayer's disclosure does not allow a subsequent disclosure by an IRS official. However, Defendant offered no evidence to show that Mr. Scholan, unlike Mr. Swanson and Ms. Callahan, sought a determination as to whether his writing of the letter would be a violation of pertinent tax laws or IRS regulations. Moreover, it is not suggested that Mr. Scholan knew or even relied upon Plaintiff's prior execution of a release.

The Court finds that Mr. Scholan's conduct constituted a blatant violation of 26 U.S.C. § 6103. In addition, the Court finds Mr. Scholan's conduct was grossly negligent, meriting an award of punitive damages. Mr. Scholan's conduct, in light of his prior training and IRS regulations, was in reckless disregard of the law and the rights of Plaintiff. *See Barrett v. United States*, 100 F.3d at 40.

**Damages**

8. Plaintiff seeks to recover the greater of her statutory or actual damages. Based upon the findings set forth above, the Court finds that Plaintiff is entitled to recover $4,000.00 in statutory damages for four acts of wrongful discloser made by Swanson, Callahan and Scholan. Plaintiff is also entitled to punitive damages.

Plaintiff claims actual damages as a result of Defendant's wrongful disclosures in the form of mental distress and emotional damages, humiliation, loss of the Citadel Mall lease, and loss of peripheral vision in Plaintiff's right eye as a result of a grand mal seizure.

The Court finds that Plaintiff has failed to prove that the injury to her eye was caused by Defendant's conduct. Plaintiff testified that she had previously suffered grand mal seizures (five in the last eighteen years) and

---

**3.** Upon learning of Mr. Scholan's inaccuracies, counsel for the Government brought the matter to the Court's attention. The Court does not suggest, nor should it be inferred, that counsel for the Government knowingly submitted false information to the Court.

has suffered from epilepsy since she was twenty-eight. The evidence offered is insufficient to show that Plaintiff's seizure and resulting vision loss were caused by Defendant's wrongful conduct. The Court also finds that the evidence fails to establish that the Citadel Mall lease was lost as a result of the wrongful conduct of Defendant. This Court has already found that Defendant did not wrongfully disclose Plaintiff's return information to Mr. Taylor or Ms. Purdy. Furthermore, this lease was for the Kid's Avenue store, a business which Plaintiff has consistently asserted was owned and operated by Plaintiff's son, Tristan Ward. Thus, the Court finds Plaintiff is unable to assert a claim for the loss of this lease.

■ The Court finds that Plaintiff's claims for mental distress, emotional damages and humiliation have merit. *See Hrubec v. National Railroad Passenger Corporation,* 829 F.Supp. 1502, 1504–06 (N.D.Ill.1993) (analyzing the issue of whether emotional distress damages are available under 26 U.S.C. § 7431(c)(1)(B)). The evidence offered by Plaintiff establishes that Defendant's wrongful conduct caused Plaintiff's personality to change. She became bitter and consumed by a battle with the IRS in an effort to establish that what Defendant's agents and employees had said and done was incorrect. As stated by Plaintiff's mother, Ms. Altavilla, Plaintiff was so enraged and obsessed by Defendant's conduct that "we all began to hate her." Similar testimony was offered by Plaintiff's son, Tristan Ward and her daughter, Kelly Gilmour. Plaintiff's daughter testified that as a result of Defendant's actions, her mother became irritable and she frequently cried. Plaintiff also testified that the information released by Defendant caused a number of her friends and family members to question whether Plaintiff really was a drug dealer and/or tax protestor. The Court finds that, as a result of Defendant's wrongful disclosures, Plaintiff suffered actual damages in the form of emotional distress. The Court further finds that $75,000 will fairly compensate Plaintiff for the damages she suffered as a result of Defendant's wrongful conduct over a three month period.

9. Based upon this Court's finding, that Mr. Scholan's conduct was grossly negligent, Plaintiff is also entitled to recover punitive damages pursuant to 26 U.S.C. § 7431(c)(1)(B). Considering the conduct of Mr. Scholan, the harm inflicted upon Plaintiff, the deterrent aspect of a punitive damage award and the public medium through which Plaintiff's return information was disclosed, this Court finds that Plaintiff is entitled to recover $250,000 in punitive damages. *See Continental Trend Resources, Inc. v. OXY USA, Inc.,* 101 F.3d 634 (discussing factors to be considered in an award for punitive damages).

As a public employee and a revenue officer for the IRS Mr. Scholan holds a position of trust and power. Along with that trust and power comes a high degree of responsibility. Part of that responsibility requires that you accept criticism, however inaccurate and/or unjustified, in silence and that you act in accordance with the law. While admittedly equipped with 20/20 vision, every other revenue officer, when asked, acknowledged that Mr. Scholan's conduct was clearly inappropriate in light of the disclosure laws. In addition, the Court notes that the medium which Mr. Scholan used was expected to and did reach a public audience, resulting in a wide dissemination of Plaintiff's return information. *See Miller v. United States,* 66 F.3d 220, 224 (9th Cir.1995).

The conduct of our Nation's affairs always demands that public servants discharge their duties under the Constitution and laws of this Republic with fairness and a proper spirit of subservience to the people whom they are sworn to serve. Public servants cannot be arbitrarily selective in their treatment of citizens, dispensing equity to those who please them and withholding it from those who do not. Respect for the law can only be fostered if citizens believe that those responsible for implementing and enforcing the law are themselves acting in conformity with the law. By this award, this Court gives notice to the IRS that reprehensible abuse of authority by one of its employees cannot and will not be tolerated.

### CONCLUSIONS OF LAW

In addition to those findings of law which are included in the Court's findings of fact

set forth above the Court makes these additional findings of law:

■ 1. Plaintiff contends that she is entitled to recover the $1,000 statutory damage for each listener to the KVOR radio talk show on which Mr. Swanson and Ms. Callahan appeared. Plaintiff takes the position that there was an act of disclosure for each listener.[4] The Court disagrees. Pursuant to 26 U.S.C. § 7431(c)(1)(A), Plaintiff is only entitled to recover $1,000 "for each *act* of unauthorized disclosure." (emphasis added). Under 26 U.S.C. § 6103(b)(8) "[t]he term 'disclosure' means the making known to any person in any manner whatever a return or return information."

■ Plaintiff's argument improperly focuses on the audience that heard or received the unauthorized disclosure. Based upon the statute it is the conduct or "act" of making the unauthorized disclosure that is actionable and triggers the statute. In *Miller, supra,* the Ninth Circuit Court of Appeals rejected a plaintiff's assertion that each copy of the Los Angeles Times, containing a story in which her return information was improperly disclosed by an IRS official, constituted an actionable unauthorized disclosure. The court held "[b]ecause the statute punishes 'disclosure,' not subsequent disseminations, we conclude that extending *Mallas v. United States,* 993 F.2d 1111 (4th Cir.1993), into the current situation is not warranted." *Id.* at 224. Thus, the court concluded that only one act of an unauthorized disclosure occurred when the IRS officer made the statement to the Los Angles Times. *Id.* This Court agrees. It is the act of disclosure that triggers and defines liability, not the extent or scope of the disclosure. To accept Plaintiff's argument would require this Court to give no effect to the word "act" as used in § 7431(c)(1)(A), thus violating a cardinal rule of statutory interpretation.

■ In an effort to distinguish *Miller,* Plaintiff asserts that, unlike a newspaper article, Swanson and Callahan's live radio appearance was a primary as opposed to a secondary dissemination. Once again, this Court finds that the medium or manner by which the information is disseminated is immaterial for purposes of determining the "acts" of disclosure pursuant to § 7431. Neither does this Court find *Mallas* supportive of Plaintiff's argument.

In *Mallas,* the district court found and the Fourth Circuit Court of Appeals affirmed that an act of disclosure occurred for each named person to which the IRS mailed return information. *Mallas,* 993 F.2d at 1124–25. In making this finding the district court found that two acts of disclosure were committed where only one envelope was sent, but the envelope was addressed to two named persons. In its affirmance, the Court of Appeals, after reviewing § 7431(c)(1)(A) and § 6103(b)(8), concluded:

> that the "act" to be counted for computing damages is the "making known to any person in any manner whatever" the return information. Each time the Government "makes known" return information to a person in violation of § 6103, it has committed an "act of unauthorized disclosure." If the IRS addresses and mails a single RAR to two people, it makes the information in the RAR known to each of them no differently than if it had decided to use two copies of the RAR, two envelopes, and two stamps....

*Id.* at 1125. Liability is triggered under § 7431(c)(1)(A) by the "act" of "making known to any person in any manner whatever a return or return information." In *Mallas,* Defendant committed 73 different "acts" by addressing and placing in the mail envelopes that were addressed and directed to seventy-three different individuals. Thus, Defendant committed 73 separate "acts" of disclosure. In the case at bar Swanson and Callahan each committed an act of disclosure when they discussed Plaintiff's return information on the radio. Nevertheless, to the extent that *Mallas* could be interpreted as holding that an act of disclosure is committed for every person who learned about Plaintiff's return information, as a consequence of

---

4. This Court has already found that the evidence offered by Plaintiff was too speculative to allow this Court to determine that there were 3,200 people who listened to and heard Swanson and Callahan discussing Plaintiff's return information on KVOR radio.

Swanson and Callahan's act of appearing on the radio, this Court disagrees with such an analysis. It is the "act" of disclosure, not the receipt of information which triggers liability. Moreover, taken literally, the analysis applied in *Mallas* is inconsistent with the implicit finding made in *Rodgers v. Hyatt,* 697 F.2d 899, where plaintiff was found to be entitled to only $1,000 for a single disclosure made by an IRS official in a meeting at which two Amax officials were present. *Id.* at 905–06. It is for these reasons that the Court further rejects Plaintiff's argument that she is entitled $1,000 for every listener to the KVOR radio talk show.

2. Defendant, relying upon *Barrett v. United States,* 917 F.Supp. 493, 504 (S.D.Tex.1995), asserts that Plaintiff is only entitled to recover punitive damages if she can show actual damages in excess of $1,000.00 pursuant to § 7431. Based upon this Court's findings Defendant's argument is moot. Nonetheless, the Court rejects Defendant's interpretation of § 7431 and finds the analysis employed by the court in *Mallas v. United States,* 993 F.2d 1111, 1125–26 (4th Cir.1993), more persuasive.

3. This Court finds that, in addition to her actual and punitive damages, Plaintiff, as the "prevailing party," is entitled to recover her costs and reasonable attorney's fees. *See Huckaby v. United States Department of the Treasury,* 804 F.2d 297 (5th Cir.1986) (pursuant to 26 U.S.C. § 7430(a) a prevailing party in suit brought under 26 U.S.C. § 7431 is entitled to recover reasonable litigation costs which includes reasonable attorney's fees).

THEREFORE, it is

**ORDERED** that, based upon the foregoing findings of facts and conclusions of law, Plaintiff is entitled to a Judgment in her favor and against the Defendant in the amount of $325,000 and the Clerk of Court is hereby directed to enter the Judgment. It is further

**ORDERED,** absent stipulation by the parties as to the amount of reasonable attorneys' fees and costs, Plaintiff's Counsel shall submit, within thirty (30) days from entry of this order, an itemized bill setting forth the reasonable attorneys' fees and costs incurred in

bringing this action as well as affidavits supporting the fees and costs. Within twenty (20) days from the date of Plaintiff's filing, Defendant may file its specific objection to any of the fees and costs sought.