**Zariq SIDDIQUI, et al., Plaintiffs,**

**v.**

**UNITED STATES of America, Defendant.**

**No. CIV.99–1596–PHX–ROS.**

United States District Court, D. Arizona.

July 10, 2002.

A. Jerry Busby, Law Office of A. Jerry Busby, Phoenix, AZ, for Plaintiffs.

Stuart D. Gibson, U.S. Dept. of Justice Tax Division, Washington, DC, for Defendant.

## ORDER

SILVER, District Judge.

Pending before the Court is Plaintiffs' Motion for Partial Summary Judgment Re: Statutory Damages (Doc. # 46) filed December 21, 2001. Defendant filed its Opposition (Doc. # 48) on January 18, 2002, and Plaintiffs filed a Reply (Doc. # 52) on January 31, 2002. Also pending is Defendant's Motion for Partial Summary Judgment Re: Punitive Damages (Doc. # 56) filed February 12, 2002. Plaintiffs filed a Response (Doc. # 58) on March 15, 2002, and Defendant filed a Reply (Doc. # 61) on April 1, 2002. For the reasons set forth below, Plaintiffs' Motion will be denied, and Defendant's Motion will be granted.

### Background

Plaintiffs are various taxpayers, including five individuals and a corporation, who filed a Complaint on September 2, 1999 [1] alleging that the Internal Revenue Service ("IRS") made unauthorized disclosures of Plaintiffs' tax information in violation of 26 U.S.C. § 6103. Plaintiffs also allege that the IRS acted willfully and with gross negligence, entitling Plaintiffs to punitive damages pursuant to 26 U.S.C. § 7431. In its Answer, Defendant admits that Special Agent Greg Heck made an unauthorized disclosure of Plaintiffs' tax information at a retirement party held in Heck's honor on October 24, 1998. It is undisputed that approximately 100 people attended the party, which included a "roast" of Heck. In connection with the roast, Heck made reference to the then-ongoing investigation by the IRS of Plaintiffs' tax practices.[2]

---

1. Plaintiffs filed an Amended Complaint on July 26, 2000.

2. Plaintiffs Zariq Siddiqui, Joseph Vullo, and Richard Vullo were indicted for tax evasion on August 6, 2001. After entering plea agreements, each was sentenced on October 22, 2001 to approximately sixteen months in prison and fined $5000. The present action was stayed pending resolution of these criminal proceedings. The stay was lifted on November 9, 2001.

## Discussion

In their Motion for Partial Summary Judgment, "[e]ach Plaintiff contends that he or she is entitled to $1,000 for the disclosures made to each of the 100 persons at the retirement party." (Mot. at 7). Defendant, however, contends that "each Plaintiff may recover a total of $1,000, as [Heck] committed only one 'act.'" (Opp'n at 7). In short, Plaintiffs argue that they are entitled to a total of $600,000 in statutory damages pursuant to § 7431; Defendant argues that Plaintiffs are only entitled to $6,000 as a result of the unauthorized disclosure.

In its Motion for Partial Summary Judgment, Defendant contends that Plaintiffs cannot recover punitive damages pursuant to § 7431(c) because Plaintiffs have neither sustained nor alleged actual damages. Plaintiffs admit that they have not sustained actual damages as a result of Defendant's unlawful disclosure, but contend that they may nevertheless recover punitive damages under § 7431.

## I. LEGAL STANDARD

This Court may grant summary judgment if it finds there is "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). Where, as here, the parties are in essential agreement about the facts giving rise to their dispute, "a motion for summary judgment is appropriate because [the parties] raise[ ] questions of law, the resolution of which does not involve disputed 'material' facts." *Delbon Radiology v. Turlock Diagnostic Ctr.*, 839 F.Supp. 1388, 1391 (E.D.Cal. 1993); *see also Edwards v. Aguillard*, 482 U.S. 578, 591, 594, 107 S.Ct. 2573, 96 L.Ed.2d 510 (1987) (stating that interpretation of a statute is appropriate for summary judgment based on the text of the statute and/or its legislative history).

## II. ANALYSIS

### A. Statutory Damages

Section 6103 provides that, with limited exceptions, "no officer or employee of the United States ... shall disclose any [tax] return or return information." 26 U.S.C. § 6103(a)(1). "Return information" includes "whether the taxpayer's return was, is being, or will be examined or subject to other investigation." § 6103(b)(2)(A). In the absence of actual damages, § 7431 provides statutory damages for unauthorized disclosure of tax return information in the amount of "$1,000 for each act of unauthorized disclosure of a return or return information with respect to which [a] defendant is found liable." 26 U.S.C. § 7431(c)(1)(A). "The term 'disclosure' means the making known to any person in any manner whatever a return or return information." § 6103(b)(8).

Here, Plaintiffs contend that because Heck disclosed the fact that Plaintiffs were under investigation to a room full of 100 people, Defendant is liable for 100 separate acts of disclosure as to each Plaintiff. Plaintiffs rely on *Mallas v. United States*, 993 F.2d 1111 (4th Cir.1993), in support of their position.

In *Mallas*, a confidential IRS report ("RAR") was mailed to thirty-three couples at thirty-three addresses and to seven other individuals in violation of § 6103. Rejecting the defendant's argument that the mailings constituted only forty acts of disclosure (i.e., one for each RAR mailed), the Fourth Circuit calculated seventy-three separate acts of disclosure:

> [T]he act to be counted for computing damages is the "making known to any person in any manner whatever" the return information. Each time the Government "makes known" return information to a person in violation of section 6103, it has committed an "act of unau-

thorized disclosure." ... If the IRS addresses and mails a single RAR to two people, it makes the information known to each of them no differently than if it had decided to use two copies of the RAR, two envelopes, and two stamps. Nothing in the language of the statute suggests that Congress means to reward the IRS, having been found liable for violating section 6103, for the fortuity of having multiple investors living under one roof.

*Id.* at 1125. Similarly here, according to Plaintiffs, "the IRS should not be rewarded because special agent Heck fortuitously made the wrongful disclosure to 100 persons in the same room instead of making the disclosures to 100 persons in separate rooms." (Reply at 4).

For its part, Defendant primarily relies on *Miller v. United States,* 66 F.3d 220 (9th Cir.1995), and *Ward v. United States,* 973 F.Supp. 996 (D.Colo.1997). In *Miller,* the Ninth Circuit determined that an unauthorized disclosure by an IRS agent to a newspaper reporter, who subsequently published the information, constituted a single "act" of disclosure warranting only $1,000 in statutory damages. The Ninth Circuit rejected the taxpayer's argument that she was entitled to $1,000 in damages for each subscriber of the newspaper. The court noted "the public policy reason for not allowing this form of second party dissemination to be actionable," observing that "one statement on the worldwide computer network or to a television reporter could result in disseminations that could break our nation's treasury." *Id.* 224–25.

■ Although factually distinguishable, *Miller* establishes the principles that govern in the present case. First, *Miller*

emphasizes that public policy considerations, especially the potential drain on "our nation's treasury," militate against the award of high statutory damages. *Miller,* 66 F.3d at 223–24. Noting that the taxpayer's original claim sought "$1.1 billion in damages representing the paper's total circulation multiplied by $1,000," the court observed that "[i]n a case involving no actual damages, such a prayer gives new meaning to 'overreaching,' " [3] *Miller,* 66 F.3d at 224. Second, in rejecting liability for second-party dissemination, the Ninth Circuit implicitly rejected the Fourth Circuit's expansive construction of § 6103, which counts as a discrete "act" of disclosure every instance in which another person learns of a taxpayer's return information. *See Mallas,* 993 F.2d at 1125 ("Each time the government 'makes known' return information ... it has committed an 'act of unauthorized disclosure.' "). The *Mallas* court's interpretation is thus inconsistent with the Ninth Circuit's rejection of liability for second-party dissemination. Indeed, though the unauthorized disclosure of tax information "to a person who is likely to publish that information" represents a particularly effective means of "making known" confidential tax information, the Ninth Circuit determined that not every instance of disclosure constitutes a discrete "act" for the computation of damages. *Miller,* 66 F.3d at 223–224. Rather, "the disclosure of information to a person who is likely to publish that information is relevant in determining the degree of negligence or recklessness involved, *not the number of disclosures." Id.* at 225 (emphasis added).

In *Ward,* the court similarly rejected an award of damages based on the number of

---

**3.** Although the taxpayer's original request for relief was based on the newspaper's total circulation, she amended her request when she learned that the unauthorized disclosure was only included in the paper's "Valley Edition"

with a circulation of 181,734. Notably, the Ninth Circuit articulated its public policy rationale, in terms of the threat to the nation's treasury, in the context of a claim for only $181,734.

people to whom the tax information was made known, concluding that unauthorized disclosures by two IRS agents during a radio program constituted two acts of disclosure regardless of the size of the listening audience. The court rejected "the position that there was an act of disclosure for each listener," finding that such an argument "improperly focuses on the audience that heard or received the unauthorized disclosure." *Ward,* 973 F.Supp. at 1003. According to the court, under § 7431, "[i]t is the act of disclosure that triggers and defines liability, not the extent or scope of the disclosure." *Id.* "To accept Plaintiff's argument would require this Court to give no effect to the word 'act' as used in § 7431(c)(1)(A), thus violating a cardinal rule of statutory interpretation." *Id.* Although the taxpayer attempted to distinguish *Miller* on the grounds that a radio broadcast does not involve second-party dissemination, the court found "that the medium or manner by which the information is disseminated is immaterial for purposes of determining the 'acts' of disclosure pursuant to § 7431." *Id.*[4]

■ In the present case, the *Miller* principles defeat Plaintiffs' claim for $600,000 in statutory damages. First, like the taxpayer in *Miller,* Plaintiffs sustained no actual damages. Accordingly, their prayer for $600,000 in statutory damages is similarly "overreaching." *Miller,* 66 F.3d at 224. Moreover, awarding such extensive damages under the present circumstances would not only strain "our nation's treasury," *id.* at 225, it would grant Plaintiffs an unjustified windfall.[5] *Cf. Frank Music Corp. v. Metro–Goldwyn–Mayer Inc.,* 886 F.2d 1545, 1554–55 (9th Cir.1989) (declining to award statutory damages under the Copyright Act because to do so "effectively would grant plaintiffs a windfall"). Although the extent of the disclosure may be relevant in determining Plaintiffs' actual damages, or "the degree of negligence or recklessness involved," it is not relevant in determining "the number of disclosures." *Miller,* 66 F.3d at 225.

■ Second, though Heck's unauthorized disclosure "made known" Plaintiffs tax information to 100 people, "[i]t is the act of disclosure that triggers and defines liability, not the extent or scope of the disclosure." *Ward,* 973 F.Supp. at 1003; *see also Miller,* 66 F.3d at 224 ("The district court correctly limited the IRS's damages for unauthorized disclosure to $1,000 for [the agent's] *single statement* to the Los Angeles Times, Valley Edition.") (emphasis added). Thus, limiting Plaintiffs to

**4.** The *Ward* court distinguished *Mallas* on the grounds that in *Mallas,* "Defendant committed 73 different 'acts' by addressing and placing in the mail envelopes that were addressed and directed to seventy-three individuals. Thus, Defendant committed seventy-three separate 'acts' of disclosure." *Ward,* 973 F.Supp. at 1003. The court also stated that "to the extent that *Mallas* could be interpreted as holding that an act of disclosure is committed for every person who learned about Plaintiff's return information, as a consequence of [the agents'] act of appearing on the radio, this Court disagrees with such an analysis." *Id.* at 1003–04.

**5.** Plaintiffs contend that "the IRS should not be rewarded because special agent Heck fortuitously made the wrongful disclosure to 100 persons in the same room instead of making the disclosures to 100 persons in separate rooms." (Reply at 4). In this case, Plaintiffs provide no basis for concluding that Heck's single disclosure was fortuitous in this sense, or that he would have made 100 separate wrongful disclosures if the partygoers had not been assembled in a single room. In *Mallas,* by contrast, the IRS specifically intended to reach all seventy-three addressees regardless of whether some of them "fortuitously" lived at the same address. Moreover, *Miller* makes clear that the number of persons who ultimately receive the information does not determine "the number of disclosures." *Miller,* 66 F.3d at 224.

statutory damages for Heck's single statement is consistent with the Ninth Circuit's determination that "disclosure" is construed with reference to the defendant's "act," not the number of persons to whom the information is made known.

### B. Punitive Damages

■ As discussed above, § 7431 provides actual and/or statutory damages for unauthorized disclosure of tax information. In addition, § 7431 provides for punitive damages under the appropriate circumstances:

> [U]pon a finding of liability on the part of the defendant, the defendant shall be liable to the plaintiff in an amount equal to the sum of—
>
> (1) the greater of—
>
> (A) $1,000 for each act of unauthorized disclosure of a return or return information with which respect to which the defendant is found liable, or
>
> (B) the sum of—
>
> (i) the actual damages sustained by the plaintiff as a result of such unauthorized disclosure, plus
>
> (ii) in the case of a willful disclosure or a disclosure which is the result of gross negligence, punitive damages, plus
>
> (2) the costs of the action.

26 U.S.C. § 7431(c). Where, as here, the United States waives its sovereign immunity from suit, "the government's consent to be sued 'must be construed strictly in favor of the sovereign, and not enlarg[ed] ... beyond what the language requires.'" *United States v. Nordic Village, Inc.*, 503 U.S. 30, 33–34, 112 S.Ct. 1011, 117 L.Ed.2d 181 (1992) (quoting *McMahon v. United States*, 342 U.S. 25, 27, 72 S.Ct. 17, 96 L.Ed. 26 (1951)); *see also United States Dep't of Energy v. Ohio*, 503 U.S. 607, 627, 112 S.Ct. 1627, 118 L.Ed.2d 255 (declining to extend waiver of sovereign immunity to

punitive fines where statutory waiver was ambiguous).

Here, Defendant contends that because Plaintiffs have not sustained any actual damages, they cannot recover punitive damages under § 7431(c). According to Defendant, "[w]hen a plaintiff has not sustained any actual damages, Congress has limited that plaintiff's recovery to statutory damages under § 7431(c)(1)(A)." (Mot. at 7). "Had Congress intended to waive immunity to permit taxpayers who had not sustained actual damages to recover punitive damages, it would have said so, clearly and unambiguously." (*Id.*).

Plaintiffs concede that they have not sustained any actual damages as a result of the unauthorized disclosure of their tax information. (*See* Resp. at 2). However, Plaintiffs contend that the statutory language supports an award of punitive damages even in the absence of actual damages. (Resp. at 2). Because subsection (B)(1) provides for "the sum of" actual damages "plus" punitive damages, Plaintiffs argue that even if "actual damages are zero and there are punitive damages, 'the sum of' means the zero plus 'X', the amount of punitive damages." (*Id.* at 4). Plaintiffs also rely on *Mallas* and various cases in which courts have awarded punitive damages despite the absence of actual damages.

■ The Ninth Circuit has not addressed "whether § 7431 punitive damages can apply where there are no actual damages." *Miller*, 66 F.3d at 224. However, the structure of § 7431(c), together with this Court's clear mandate to construe narrowly waivers of sovereign immunity, establish that punitive damages are not available under § 7431(c) absent a showing of actual damages. *Accord Barrett v. United States*, 917 F.Supp. 493, 504 (S.D.Tex.1995) ("The very language and structure of the statute ... mean that

punitive damages are recoverable only when actual damages have been proved."); *Smith v. United States*, 730 F.Supp. 948, 955 (C.D.Ill.1990), *rev'd on other grounds*, 964 F.2d 630 (7th Cir.1992) ("[T]he clear language of the statute provides that when a taxpayer only recovers statutory damages, punitive damages are unavailable to him."); *William E. Schrambling Accountancy Corp. v. United States*, 689 F.Supp. 1001, 1008 (N.D.Cal.1988), *rev'd on other grounds*, 937 F.2d 1485 (9th Cir.1991) (holding that a plaintiff that has not proved actual damages is not entitled to punitive damages).

Section 7431(c) provides that a taxpayer may recover either $1,000 for an unauthorized disclosure, or, the sum of actual damages "plus," where appropriate, punitive damages. In *Mallas*, the Fourth Circuit determined that "a taxpayer may recover punitive damages, even where actual damages are zero." *Mallas*, 993 F.2d at 1126. Similarly, Plaintiffs argue that "[t]he word 'plus' is critical in the statutory interpretation," because "the sum of" actual and punitive damages allows for the possibility that actual damages may be zero. (Resp.

at 4). In Plaintiffs' formulation, where X = punitive damages: $0 + X = X$.

▇ In reaching this conclusion, neither Plaintiffs nor the Fourth Circuit address the fact that their interpretation of § 7431 achieves, at best, an ambiguous waiver of sovereign immunity with respect to the availability of punitive damages in the absence of actual damages. Traditional tort principles, however, link an award of punitive damages to a showing of actual damages. *See BMW of N. Am., Inc. v. Gore*, 517 U.S. 559, 580, 116 S.Ct. 1589, 134 L.Ed.2d 809 (1996) ("The principles that exemplary damages must bear a 'reasonable relationship' to actual damages has a long pedigree.") (citing cases).[6] Against this common law backdrop, Plaintiffs' interpretation of § 7431 enlarges the waiver of sovereign immunity "beyond what the [statutory] language requires." *Nordic Village, Inc.*, 503 U.S. at 33–34, 112 S.Ct. 1011. Under these circumstances, because § 7431 lacks an unequivocal waiver for punitive damages in the absence of actual damages, the expansive waiver urged by Plaintiffs cannot be justified. *See United States Dep't of Energy*, 503 U.S. at 627, 112 S.Ct. 1627.

---

6. Plaintiffs are correct in observing that state law does not determine the availability of punitive damages under § 7431. (*See* Resp. at 9). However, the principle that punitive damages cannot be awarded in the absence of actual damages is a matter of common law generally, not unique to Arizona. *See, e.g., Martini v. Fed. Nat'l Mortgage Ass'n*, 178 F.3d 1336, 1350 (D.C.Cir.1999); *Belleville v. Davis*, 262 Or. 387, 498 P.2d 744, 752 (1972); *1488, Inc. v. Philsec Inv. Corp.*, 939 F.2d 1281 (5th Cir.1991) (Texas law); *Guar. Serv. Corp. v. American Employers' Ins. Co.*, 893 F.2d 725 (5th Cir.1990) (Miss.law); *Richard v. Hunter*, 151 Ohio St. 185, 85 N.E.2d 109, 110 (1999). Although Congress is free to reject the common law in enacting a statute, in the context of sovereign immunity, it must do so unambiguously. As discussed above, § 7431 does not unambiguously waive sovereign immunity with respect to punitive damages in the ab-

sence of actual damages. Moreover, the limited waiver of sovereign immunity in § 7431 distinguishes the cases cited by Plaintiffs in which punitive damages were awarded despite the absence of actual damages. *See, e.g., Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *Basista v. Weir*, 340 F.2d 74 (3d Cir.1965). In these cases, because plaintiffs brought causes of action against state officials pursuant to 42 U.S.C. § 1983, sovereign immunity was not in issue. Finally, Plaintiffs' reliance on *Basista* is misplaced. In *Basista*, the court noted that a plaintiff need not allege even nominal damages for the violation of a federal right because the damage is evidenced by the violation itself. Here, by contrast, Congress has expressly made provision for nominal damages in § 7431 and, at the same time, expressly coupled punitive damages with actual damages.

Accordingly,

**IT IS ORDERED** that Plaintiffs' Motion for Partial Summary Judgment Re: Statutory Damages (Doc. # 46) is **DENIED**.

**IT IS FURTHER ORDERED** that Defendant's Motion for Partial Summary Judgment Re: Punitive Damages (Doc. # 56) is **GRANTED**.

**IT IS FURTHER ORDERED** that a Final Pretrial Conference is set for **October 18, 2002** at **1:30 p.m.** The parties shall file a Joint Proposed Pretrial Order by **September 18, 2002.** All Motions in Limine are to be filed at the time of filing the Joint Proposed Pretrial Order. Responses to the Motions in Limine are due within **ten days** from the receipt of the Motions. No replies will be filed.